# UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE: HONORABLE M. MILLER BAKER, JUDGE

| | |
|---|---|
| HUNG VUONG CORPORATION, *et al.* | |
| Plaintiffs, | |
| v. | |
| UNITED STATES, | **Court No. 19-00055** |
| Defendant, | |
| and | |
| CATFISH FARMERS OF AMERICA, *et al.* | |
| Defendant-Intervenors. | |

## PLAINTIFFS' COMMENTS IN OPPOSITION TO REMAND

Robert L. LaFrankie

Crowell & Moring LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004
Tel:  (202) 624-2500
Email:  rlafrankie@crowell.com

*Counsel to Plaintiffs, Hung Vuong Corporation, et al.*

Dated:  May 21, 2021

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................... 1

SUMMARY OF ARGUMENT ................................................. 1

STANDARD OF REVIEW ....................................................... 3

BACKGROUND ...................................................................... 4

    A.    The Court's Remand Order and Findings ............................. 4

    B.    Commerce's Final Remand ................................................. 6

    C.    HVG Comments and Resubmitted Databases ..................... 9

ARGUMENT ......................................................................... 11

I.    COMMERCE'S DECISION TO IMPOSE TOTAL AFA IS
    UNSUPPORTED BY SUBSTANTIAL EVIDENCE AND
    CONTRARY TO LAW ...................................................... 11

    A.    Legal Standard – Commerce Must Demonstrate with
        Substantial Evidence that Partial AFA is not
        Appropriate under the Circumstances ............................... 12

    B.    Commerce's Decision to apply Total AFA is
        Unsupported by Substantial Evidence ............................... 13

        1.    *Substantial evidence does not support Commerce's
            decision to apply total AFA based on Missing
            Source Documents and Defective CONNUM
            Specific Reporting.* ..................................................... 15

        2.    *Substantial Evidence does not support
            Commerce's decision to use total AFA based on
            Customer Relationships and Labor FOPs* ................... 19

        3.    *Commerce Failed to Consider all Contrary Record
            Evidence.* .................................................................. 22

        4.    *Conclusion* ............................................................... 28

II.    COMMERCE SHOULD NOT APPLY A TOTAL AFA RATE
    OF $3.87 PER KG AND IT HAS OTHERWISE FAILED TO
    ADEQUATELY EXPLAIN OR JUSTIFY ITS DECISION .......... 29

i

III.   CONCLUSION ................................................................................35

DCACTIVE-61363442.1

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ausimont USA, Inc. v. United States,*
   19 CIT 151, 882 F. Supp. 1087 (1995) ...................................................... 3

*BMW of North America LLC . United States*, 926  F.3d 1291
   (Fed. Cir. 2019) .................................................................................... 30

*BMW of North America LLC v. United States,*
   926 F.3d 1291 (Fed. Cir. 2019) .......................................................... 33

*Changzhou Wujin Fine Chem. Factory Co. v. United States,*
   701 F.3d 1367 (Fed. Cir. 2012) .............................................................. 4

*Chevron U.S.A. Inc. v. Natural Res. Def. Council,*
   467 U.S. 837 (1984) ................................................................................ 3

*Consol. Edison Co. v. NLRB,*
   305 U.S. 197 (1938) ................................................................................ 3

*FDA v. Brown & Williamson Tobacco Corp.,*
   529 U.S. 120 (2000) ................................................................................ 4

*Gerald Metals, Inc. v. United States,*
   132 F.3d 716 (Fed. Cir. 1997) ....................................................... 22, 23

*Hyundai Steel Co. v. United States,*
   319 F. Supp. 3d 1327 (Ct. Int'l Trade 2018) ...................................... 30

*POSCO v. United States,*
   296 F. Supp. 3d 1320 (CIT 2018) .................................................. 30, 31

*Shandong Rongxin Imp. & Exp. Co., Ltd. v. United States,*
   203 F. Supp. 3d 1327 (Ct. Int'l Trade 2017) ...................................... 26

*Xinjiamei Furniture (Zhangzhou) Co. v. United States,*
   968 F. Supp. 2d 1255 (Ct. Int'l Trade 2014) ........................................ 3

DCACTIVE-61363442.1

**Statutes**

19 U.S.C.
  § 1516a(b)(1)(B)(i) ................................................................... 3
  § 1677e(d)(2) .............................................................. 30, 34

**Other Authorities**

*AD NME Methodologies in NME Economies: Valuing Labor*,
  76 Fed. Reg. 36092 (June 21, 2011) .................................................. 20

DCACTIVE-61363442.1

### GLOSSARY

| Abbreviation | Term |
|---|---|
| *Advance Draft Remand Comments* | HVG Comments in Advance of Draft Remand (Feb. 25, 2021) (Rejected) |
| AFA | Adverse Facts Available |
| Commerce | United States Department of Commerce |
| CONNUM | Control Number |
| *CONNUM Rejection Letter* | Rejection of New Factual Information in Pre-Draft Remand Comments (Feb. 26, 2021) |
| *Draft Remand* | Draft Results of Redetermination Pursuant to Court Remand (March 16, 2021) |
| *Draft Remand Comments* | HVG Comments on Draft Remand (March 22, 2021) |
| *Final Decision Memo* | *Issues and Decision Memorandum for the Final Results of the Fourteenth Administrative Review: 2016-2017,* (April 19, 2019) |
| *Final Remand* | Final Results of Redetermination Pursuant to Court Remand (Apr. 1, 2021) |
| FOP | Factors of Production |
| HVG or Plaintiffs | Hung Vuong Group |
| *HVG Rule 56.2 Brief* | Memorandum in support of Plaintiffs' Rule 56.2 Motion for Judgment on the Agency Record (Nov. 6, 2019), ECF No. 38 |

## **GLOSSARY**

| **Abbreviation** | **Term** |
|---|---|
| *HVG Verification Report* | *Verification of the Sales and Factors of Production Response of Agifish and HVG* (April 2, 2019) |
| NME | Non-market Economy |
| RCD | Remand Confidential Record Document |
| RPD | Remand Public Record Document |

DCACTIVE-61363442.1

## INTRODUCTION

On behalf of Hung Vuong Group ("HVG" or "Plaintiffs"), and pursuant to this Court's December 3, 2020 Opinion and Order, ECF No. 71, and the Court's April 30, 2021 remand Scheduling Order, ECF No. 79, we submit Plaintiffs' comments in opposition to the Final Results of Redetermination Pursuant to Court Remand (Apr. 1, 2021) ("*Final Remand*"), filed by the U.S. Department of Commerce ("Commerce") on April 2, 2021, ECF No. 75. Commerce filed the administrative record for the *Final Remand* on April 16, 2021, ECF No. 77.[1]

## SUMMARY OF ARGUMENT

In its *Final Remand*, Commerce upheld its decision to apply total AFA to HVG. Commerce also determined again to apply the highly punitive AD rate of $3.87 per kg as the total AFA rate. Commerce has failed to adequately explain its decision or to support it with substantial evidence. Commerce now bases its findings of total AFA on even less evidentiary support than its previous decision. Indeed, Commerce is no

---

[1] References to the administrative record for the *Final Remand* are shown as "RCD" (confidential) and "RPD" (public). References to the initial administrative record submitted to the Court on July 11, 2020, ECF No. 25, are shown as "CD" (confidential) and "PD" (public).

1

longer relying on two of its justifications that were central to its previous decision. This includes HVG's byproduct calculations, which Commerce claimed were "mathematically impossible", thereby undermining HVG's entire FOP data. It also includes the failure of HVG's customers to respond to various questionnaires, which Commerce claimed undermined HVG's U.S. sales database. The remaining deficiencies relied upon by Commerce do not support a finding of total AFA. Nor has Commerce demonstrated this with substantial evidence.

Further, Commerce 's decision to select a total AFA rate of $3.87 is unreasonable and unsupported by substantial evidence. In selecting this rate, Commerce failed to properly "evaluate" whether this rate is appropriate. Commerce also failed to support this decision with substantial evidence.

We discuss this below. We first provide the standard of review and a brief overview of the procedural background and issues presented. We next provide our legal arguments demonstrating that Commerce's decision to apply total AFA to HVG is unlawful and otherwise unsupported by substantial evidence.

2

## STANDARD OF REVIEW

The Court will hold unlawful agency determinations that are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i); *Ausimont USA, Inc. v. United States*, 19 CIT 151, 157, 882 F. Supp. 1087, 1092 (1995). Substantial evidence means that there is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The Court also reviews Commerce's remand redeterminations for compliance with the Court's remand order. *Xinjiamei Furniture (Zhangzhou) Co. v. United States*, 968 F. Supp. 2d 1255, 1259 (Ct. Int'l Trade 2014) (quoting *Nakornthai Mill Public Co. v. United States*, 587 F. Supp. 2d 1303, 1306 (Ct. Int'l Trade 2008).

In judging the Department's interpretation of a statute, the Court does so under the framework established by *Chevron U.S.A. Inc. v. Natural Res. Def. Council*, 467 U.S. 837, 842-43 (1984). Under *Chevron*, the Court first asks whether Congress has directly spoken to the precise question at issue. If Congress has done so, the inquiry ends; the Court "must give effect to the unambiguously expressed intent of Congress."

3

*FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132 (2000) (quoting *Chevron*, 467 U.S. at 842-43). Commerce must act reasonably and may not be arbitrary and capricious. *See e.g.*, *Changzhou Wujin Fine Chem. Factory Co. v. United States*, 701 F.3d 1367, 1374 (Fed. Cir. 2012) ("Commerce's decision will be set aside if it is arbitrary and capricious.").

## **BACKGROUND**

### A.    **The Court's Remand Order and Findings**

The Court vacated Commerce's *Final Results* with regard to its application of "total AFA." *See Hung Vuong Corp., et al. v. United States,* Court No. 19-00055, Slip Op. 20-174 (Ct. Int'l Trade Dec. 4, 2020), ECF No. 71 *("Slip Op.")* at 90. The Court ordered Commerce to reconsider two specific aspects of its findings. First, the Court determined that "Commerce could not lawfully rely upon the failure of {HVG's} customers to answer Commerce's questionnaire as a basis to apply facts otherwise available" because "Commerce gave no notice of the deficiency." *See Slip Op*. at 56. The Court instructed Commerce to "reconsider its decision to apply facts otherwise available as to customer relationships and determine whether it should apply partial facts

4

available." *Id.* at 57. This includes reconsideration of whether or not to use "an adverse inference", and to "thoroughly explain why it reaches whatever decision it makes." *Id.* at 61.

Second, the Court determined that Commerce's decision on the "byproduct" issue was not supported by substantial evidence because Commerce "did not address {HVG's] explanation for the byproduct weight gain." *See id.* 84-85. The Court noted that Commerce "rejected *all* the factors of production" based on the byproduct issue, even though "there is nothing in the administrative record showing Commerce considered (much less addressed)" HVG's arguments on this point. *See id.* at 86 (emphasis in original). The Court remanded for Commerce to consider "whether to apply partial facts available instead of total facts available" as to the FOP, and whether to instead disallow the byproduct offset as HVG had suggested. *See id.* The Court instructed Commerce to reconsider whether to use an "adverse inference" as to the FOPs, and to "thoroughly explain its decision on this issue. *Id.* at 87.

The two Commerce findings overturned by the Court were central to Commerce's decision to reject HVG's data and to use total AFA. This

5

includes Commerce's rejection of HVG's sales database[2] and its rejection of HVG's FOP files.[3] The Court therefore vacated Commerce's *Final Results* with regard to its "application of total 'AFA.'" *See id.* at 90. The Court instructed Commerce to "reconsider" these two specific aspects of its ruling, and whether reconsideration of these two issues "would allow for application of 'partial AFA'" in its overall decision. *See id.* The Court also instructed Commerce to "reconsider the rate" applied to HVG as part of its overall reconsideration of total AFA. *See id.* at 91-92.

## B. Commerce's Final Remand

In its *Final Remand* decision, Commerce acknowledged that the Court ordered it to "reconsider two aspects of its application of AFA," and to "consider whether application of total AFA (rather than partial AFA)" might be appropriate in this case. *See Final Remand* at 1-2.

---

[2] *Issues and Decision Memorandum for the Final Results of the Fourteenth Administrative Review: 2016-2017,* (April 19, 2019) ("*Final Decision Memo*") (PD 547) at 28-29, Appx_ (noting that Commerce "cannot use HVG's Section C questionnaire responses to determine an accurate and reliable dumping margin" due in large part to HVG's failure "to cooperate in responding to request for information with respect to its relationship with its customers").

[3] *See Final Decision Memo* (PD 547) at 35, Appx_ (noting Commerce does "not have a reliable Section D database with which to calculate an accurate margin for HVG" due in large part to Commerce's finding that "the foundation of {HVG's} reporting is based on a mathematical impossibility").

6

Commerce also noted that the Court was required "to vacate Commerce's application of 'total AFA' in view of these two findings and ordered that, on remand, Commerce must reconsider whether partial AFA is appropriate." *See id. at 8.*

In further summarizing the Court's remand instructions, Commerce noted that the Court reviewed each of the "four bases" Commerce relied upon to support its total AFA finding, including: (1) failure to maintain source documents; (2) reporting failures related to customer relationships; (3) CONNUM reporting issues; and (4) FOP reporting failures. *See id.* at 6. While noting that the Court upheld Commerce's decisions based on finding 1 (failure to maintain source documents) and finding 3 (CONNUM reporting issues), Commerce acknowledges that the Court remanded its total AFA findings for reconsideration based on finding 2 (customer relationships) and finding 4 (FOP reporting failures). *See id.* at 6-8. Commerce also acknowledged that the Court "vacate{d} Commerce's application of 'total AFA' in view of these two unsubstantiated findings and ordered that, on remand, Commerce must reconsider whether partial AFA is appropriate." *See id. at 8.*

7

Commerce next noted that, in light of its deficiencies in analyzing these two issues, the Court instructed Commerce to: (1) "reconsider whether to apply partial facts available because it could not lawfully apply facts otherwise available based on the failure of Hung Vuong's customers to answer Commerce's questionnaires"; and (2) "thoroughly address the by-product issue" and to "consider whether to apply partial facts available instead of total AFA to HVG's FOPs" for this reason. *See id* at 7-8. Commerce also acknowledged that the Court required it "to consider the extent to which its conclusion {on the byproduct issue} affects its decision on the adverse inference as to HVG's FOP reporting more broadly." *See id* at 8.

Despite correctly framing the various remand issues, Commerce did not actually comply with the Court's specific instructions. Commerce discusses the two issues remanded by the Court, and then decides instead not to rely on those two findings to support its decision. *See id*. at 18 (noting that Commerce is "no longer relying" on its prior findings on the "by-product" reporting and HVG's customer responses). Commerce explains that it is now finding that total AFA is warranted based on other "numerous deficiencies" in HVG's responses, including

8

the apparent deficiencies in: (1) HVG's CONNUM reporting; (2) discarded documents, *see id.* at 11-12; and (3) other purported deficient labor rate calculations, *see id.* at 14-15. Commerce also determined "that the application of a rate of $3.87 per kilogram (kg) to HVG is appropriate." *See id.* at 2.

### C.   HVG Comments and Resubmitted Databases

On February 25, 2021, HVG submitted comments in advance of Commerce's issuance of the *Draft Remand. See* HVG Comments in Advance of Draft Remand (Feb. 25, 2021) (Rejected) ("*Advance Draft Remand Comments*") (RCD 1-5; RPD 1), Appx_.

In its *Advance Draft Remand Comments*, HVG urged Commerce not to apply "total AFA" and to instead use "partial AFA" in its upcoming remand results. *See id.* at 2-3. HVG resubmitted its Section C Sales database with the CONNUMs corrected to remove any "averaging" of its previously reported net weights, and to reflect the "net weight" methodology consistent with Commerce's comments during the court proceedings. *Id.* at 3-4. HVG made clear in its letter it was not providing any new information, but rather was only revising the

9

CONNUMs in the Section C sales database consistent with Commerce's methodology and using existing record evidence. *See id.* at 4-5.

On February 26, 2021, Commerce issued a letter ("*CONNUM Rejection Letter*") rejecting HVG's proffered revised Section C database in its entirety. Rejection of New Factual Information in Pre-Draft Remand Comments (Feb. 26, 2021) ("*CONNUM Rejection Letter*") (RPD 3), Appx_. In its *CONNUM Rejection Letter*, Commerce stated that it was rejecting HVG's revised Section C database as unsolicited "new factual information." *See id.* On March 1, 2021, HVG subsequently resubmitted its *Advance Draft Remand Comments* without the revised Section C database. *HVG Resubmitted Comments in Advance of Draft Remand* (Feb. 25, 2021) (RPD 4), Appx_.

On March 16, 2021, Commerce issued its Draft Results of Redetermination Pursuant to Court Remand (March 16, 2021) ("*Draft Remand*") (RPD 5), Appx_. On March 22, 2021, HVG submitted its comments on the Department's *Draft Remand*. HVG Comments on Draft Remand *(*March 22, 2021) ("*Draft Remand Comments*") (RPD 7), Appx_. In its *Draft Remand Comments*, HVG again urged Commerce to

10

apply "partial AFA" rather than "total AFA" in the *Final Remand Results. See Draft Remand Comments* at 6-9.

## ARGUMENT

In its *Final Remand*, Commerce has upheld its decision to apply total AFA to HVG. Commerce also again determined to apply the highly punitive AD rate of $3.87 per kg as the total AFA rate. In doing so, Commerce abandoned its reliance on the two findings questioned by the Court. Commerce sustained its use of total AFA and the $3.87 per kg rate based on the other remaining reasons articulated in its initial decision. But, Commerce failed to adequately explain its decision or to support it with substantial evidence. Indeed, Commerce now bases its findings of total AFA on even less evidentiary support than its previous decision. Commerce's decision to use total AFA again is therefore unlawful and unsupported by substantial evidence. We discuss this below.

## I.   COMMERCE'S DECISION TO IMPOSE TOTAL AFA IS UNSUPPORTED BY SUBSTANTIAL EVIDENCE AND CONTRARY TO LAW

Commerce has not adequately explained how its remaining findings justify its decision to apply total AFA under the appropriate

11

legal standard articulated by the Court. Indeed, the two findings it discarded were central to its decision to use total AFA in the first place. Nor has Commerce otherwise supported its decision with substantial record evidence or otherwise considered contradictory evidence. We discuss this below. We first discuss the proper legal standards. We next discuss that Commerce has not met those standards nor supported its decision with substantial evidence.

### A. <u>Legal Standard</u> – Commerce Must Demonstrate with Substantial Evidence that Partial AFA is not Appropriate under the Circumstances

The Court ordered that Commerce "thoroughly explain" its findings concerning any decision to rely on total AFA rather than partial AFA. *See Slip. Op.* at 59, 61, 87, and 90. The Court explained that partial AFA "may be appropriate where deficiencies are limited to particular portions of the administrative record such that Commerce can use other portions of the respondent's submissions." *See id.* at 89 (citing *Mukand, Ltd. v. United States*, 767 F.3d 1300, 1307–8 (Fed. Cir. 2014)).

The Court further noted that the "use of partial facts available is not appropriate when the missing information is core to the

12

antidumping analysis and leaves little room for the substitution of partial facts available without undue difficulty." *Id.* (citing *Mukand,* 767 F.3d at 1308). In such a situation, the Court noted that Commerce may need to resort to total AFA because "*none* of the reported data is reliable or usable." *Id.* at 90 (citing *Zhejiang Dunan Hetian Metal Co. v. United States*, 652 F.3d 1333, 1348 (Fed. Cir. 2011)) (emphasis added).

Commerce has not met these standards. Nor has Commerce otherwise supported its decision with substantial evidence. Commerce's actions do not satisfy the threshold required by the Court, particularly now that Commerce is no longer even relying on two of most critical prior findings. We discuss this below.

### B.   Commerce's Decision to apply Total AFA is Unsupported by Substantial Evidence

Rather than truly reconsider and "thoroughly" explain or address its prior findings on the two issues questioned by the Court (and their impact on Commerce's use of total AFA rather than partial AFA), Commerce has instead disregarded its reliance on the two findings questioned by the Court. *See Final Remand* at 18. Commerce appears to have side-stepped these issues to avoid "thoroughly" explaining the

13

impact these issues had on its decision to apply total AFA. But in doing so, Commerce has actually further undermined its decision.

Commerce now justifies its use of total AFA based largely on its two other broad findings, namely "HVG's failure to maintain/retain source documents and failure to report accurately and completely its sales and FOP data on a CONNUM-specific basis." *See Final Remand* at 11. Commerce also relies (to a lesser extent) on certain other subsidiary findings, including discrepancies about HVG's customer relationships, and misreported labor FOPs. *See id.* at 14-16. Commerce concludes that all of these other remaining "deficiencies substantially undermine both the sales and cost databases relied on for Commerce's margin analysis and render them unusable." *Id. at 11.*

According to Commerce, this includes HVG's failure to provide important source documents such as "production orders" (thus undermining the net weight CONNUMS for the FOPs) and "fish feed" documents (thus undermining fish feed FOPs). *See id.* at 11-12. On the sales side, Commerce similarly claims that the missing production orders and purchase orders undermined the CONNUM net weights, and missing e-mails and sales correspondence prevented verification of the

14

terms of sale and customer involvement. *Id.* at 12. Commerce reiterates that HVG failed to report the net weight CONNUM characteristic in the form and manner requested, further undermining the two databases. *See id.* at 12-13.

These remaining deficiencies now form the crux of Commerce's decision to reject HVG's sales and FOP databases as "unreliable", thereby triggering application of total AFA. *See id.* at 13-14. Indeed, Commerce concluded that without reliable FOP and sales databases "Commerce cannot calculate an accurate dumping margin" and it is therefore "impossible to determine {HVG's} final dumping margin using partial AFA." *Id.* at 13-14. As discussed below, Commerce's claims are belied by the record.

    1.    *Substantial evidence does not support Commerce's decision to apply total AFA based on Missing Source Documents and Defective CONNUM Specific Reporting.*

Substantial evidence does not support Commerce's conclusion that these remaining factors alone so undermine HVG's sales and cost databases as to render them completely "unusable", thus justifying the use of total AFA (rather than partial AFA).

15

Rather than review and weigh the evidence, Commerce instead cites the Court's findings that "substantial evidence 'permitted Commerce to find the databases unreliable'" for these reasons and that substantial evidence also supported Commerce's findings that HVG's FOP data "could not properly be tied to the finished products." *Id.* at 12 (citing *Slip Op.* at 70-71). Commerce suggests that the Court sustained Commerce's conclusion that HVG's databases were "unusable for purposes of calculating an accurate dumping margin." *Id.* (citing *Slip Op.* at 77.)

But, Commerce overplays its hand in relying on the Court's decision on these points. The portions of the Court's opinion cited by Commerce actually relate to the Court's findings on the application of "facts available" generally, and with an "adverse inference" generally. *See Slip Op.* at 71-77. While those passages cited by Commerce may justify Commerce's use of "facts available" generally (because information was missing) and even an "adverse inference" (because Commerce determined that HVG failed to cooperate to the best of its ability), those passages do not on their own sanction the use of "total AFA" as opposed to "partial AFA". *See id.*

16

Indeed, that question is precisely the point of the remand – which is whether it was appropriate for Commerce to resort to "total AFA" rather than "partial AFA", in light of the deficiencies pointed out by the Court on two of Commerce's findings. *See id*. at 87-90. But Commerce fails to demonstrate that total AFA is appropriate based on the remaining deficiencies.

The Court noted that total AFA is more properly reserved for situations where "***none*** of the reported data is reliable or usable …" such that total AFA is warranted. *See id*. at 90, (citing *Zhejiang Dunan Hetian Metal Co. v. United States*, 652 F.3d 1333, 1348 (Fed. Cir. 2011)) (emphasis added).

Commerce has not demonstrated with substantial evidence that "none" of the data is usable such that it would face "undue difficulty" in plugging whatever gaps exist in HVG's records, as the Court notes is one of the tests allowing the use of total rather than partial AFA. *See id.* at 89-90 (citing *Mukand, Ltd. v. United States*, 767 F.3d 1300, 1308 (Fed. Cir. 2014). This is particularly true now that Commerce is relying on less evidentiary support for its findings in the *Final Remand* than it relied upon in its *Final Results*.

17

Importantly, Commerce is no longer relying on the "byproduct" discrepancies as part of its analysis. *See Final Remand* at 18. Commerce had claimed this issue created a "mathematical impossibility" in HVG's data, thereby undermining the very "foundation" of HVG's reporting. *See Final Decision Memo* (PD 547) at 35, Appx_. But this is no longer a concern as Commerce is no longer relying on this issue.

Nevertheless, Commerce states that it is still "impossible" to calculate dumping margins using partial AFA. *See Final Remand* at 13-14. But this is not true. Indeed, as noted above in the background section of this brief (and as will be discussed below), HVG provided to Commerce prior to the remand a complete revised Section C database resolving the CONNUM net weight issues, which was the single biggest deficiency in its sales and cost databases other than the byproduct concern. *See Advance Draft Remand Comments* at 3-6 (RCD 1-5; RPD 1) (rejected), Appx_.

Yet, rather than actually accept and review this revised database to determine the feasibility of applying partial AFA, Commerce simply rejected the database outright as unsolicited new factual information.

18

*See CONNUM Rejection Letter* at 1-2 (RPD 3), Appx_.[4] This was

arbitrary and unreasonable, given that it could have resolved the main

remaining reporting deficiency in the data (*i.e.* CONNUMs), thus

rendering the sales and cost data at least partially usable. *See Advance*

*Draft Remand Comments* at 3-6 (RCD 1-5; RPD 1) (rejected), Appx_.

> 2. *Substantial Evidence does not support Commerce's decision to use total AFA based on Customer Relationships and Labor FOPs*

Commerce also relied upon other purported deficiencies in HVG's

data to support its use of total AFA. But these other deficiencies are

similarly unavailing, and otherwise do not support its use of total AFA.

This includes, for example, purported mis-reported "labor" FOPs and

certain documents relating to customer relationships. *See Final*

*Remand* at 14-17.

With regard to labor, Commerce cites HVG's misreported labor

amounts as a factor supporting its use of total AFA. *See Final Remand*

at 4, 7, and 14-16. HVG again continues to believe it accurately and

---

[4] Moreover, HVG believes its resubmitted Section C database was not unsolicited new factual information. As *noted in HVG's Advance Draft Remand Comments,* HVG provided the updated Section C database using only existing record information. *See Advance Draft Remand Comments* at 4 *(*RCD 1-5; RPD 1) (rejected), Appx_.

DCACTIVE-61363442.1

reasonably reported its labor hours. HVG acknowledges that Commerce disagrees, and the Court has upheld Commerce's findings on this point. *See Slip Op.* at 80-81. Yet, as HVG pointed out in *Draft Remand Comments*, labor accounts for an extremely small portion of total costs and Commerce should not rely on any such discrepancies to resort to total AFA. *Draft Remand Comments* at 8-9 (RPD 7), Appx_. Commerce can cure HVG's purported labor deficiencies by simply assuming an 8-hour day (as is typical for NME cases[5]) times whatever adverse labor rate the Department believes is reasonable. *Id.*

With regard to customer relationships, Commerce simply asserts without actual evidence that HVG's "other failures relating to interactions with its customers such as the failure to retain emails with its customers and discarded purchase orders" otherwise render the US sales data unusable. *See Final Remand* at 15. Commerce asserts that such missing information about source documents "prevent{s} verification of the terms of sale and the degree of involvement of HVG's

---

[5] *See e.g., AD NME Methodologies in NME Economies: Valuing Labor*, 76 Fed. Reg. 36092, 36094 (June 21, 2011).

customers and its ultimate downstream customers in the sales process." *Id*.

Again, Commerce overplays its hand and exaggerates the level and severity of any purported deficiencies remaining in the databases. First of all, the entire discussion and reliance on the status of "customer relationships" is inextricably entwined with the customer questionnaires, which Commerce has already said it was not relying upon for its total AFA call. *See id.* at 18. Second, Commerce did in fact independently verify most aspects of the sales databases and total sales during verification, using other records and source documents (*i.e.,* including invoices, accounting records, financial statements, etc.). *See Verification of the Sales and Factors of Production Response of Agifish and HVG (*April 2, 2019) ("*HVG Verification Report*") at 10-17 (CD 544; PD 529), Appx_. Importantly, Commerce verified and reconciled the "total quantity and value" of all U.S. sales to HVG's sales ledgers, the general ledger, and the income statement of its audited financial statements. *See id*. at 10-12. Commerce also verified the overall "completeness" of HVG's U.S. sales and it "found no discrepancies." *See id*. at 12-13.

21

Commerce has not considered or discussed such evidence in its findings. As will be discussed in the next section below in more detail, it is legal error for Commerce not to consider such contrary evidence that otherwise "detracts" from its findings. *See e.g. Gerald Metals, Inc. v. United States*, 132 F.3d 716, 720 (Fed. Cir. 1997) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)) (substantial evidence must be viewed in context of the whole record including "whatever in the record fairly detracts from its weight.")

      3.    *Commerce Failed to Consider all Contrary Record Evidence.*

While Commerce has concluded that HVG did not cooperate fully to the best of its ability on some items (*i.e.,* CONNUMS, labor, production orders), it is clear that HVG did cooperate on many other pieces of critical information. Importantly, the record shows that much of this information provided by HVG was verified without discrepancy, including many of the key pieces of information that Commerce now claims support is decision to resort to total AFA.

In its haste to apply total AFA, Commerce has not actually considered and explained all of the relevant record evidence, including that which fairly detracts from its decision. This was unlawful. As noted

DCACTIVE-61363442.1

above, Commerce is required to consider (and explain as part of its

findings all evidence on the record, including that which detracts from

its decision. *See e.g. id*. Commerce failed to consider all such contrary

evidence in this case in determining whether total AFA was

appropriate. We discuss below several of the significant pieces of such

information that are contrary to Commerce's findings.

   With regard to the discredited or missing production orders,

Commerce fails to mention that it verified HVG's total production

amounts from *other production documents*. Importantly, HVG based its

reported costs on its Daily Production Reports, which tracked actual

production. *See e.g., HVG Rule 56.2 Brief,* ECF No. 38, at 29-30. The

Department verified the accuracy and thoroughness of HVG's Daily

Production Reports, and how those reports were used to construct the

Master Files and FOP files. *See id. See also HVG Verification Report*

(CD 544; PD 529) at 24-25 and *Verification Exhibit* 14A (CD 515; PD

527), Appx_. Thus, while HVG did not keep production orders (which

are used only for "planning" purposes), it did keep other records

documenting actual production. *See HVG Rule 56.2 Brief*, ECF No. 38,

at 29-30. HVG also demonstrated that, contrary to Commerce's claims,

23

the discarded production orders did *not* contain CONNUM information. *See id*. at 32-33. Commerce has ignored this evidence in its zeal to apply total AFA.

Further, HVG tied and verified the accuracy and completeness of all production and consumption amounts in its Daily Production Reports to its General Ledger and audited financial statements. *See id*. at 20-25 and *Verification Exhibit* 13 (CD 514; PD 527) (cost reconciliation), Appx_. Commerce reconciled HVG's total costs to accounting records and to total cost of goods sold. *Id*. at 20. Commerce further tied the consumption and production amounts from company records to the total amounts reported in the FOP Files. *See id*. at 20-25. The Department reconciled all amounts to company records, noting all amounts "agree." *Id*. at 24-25. HVG further documented all amounts "with appropriate back-up documentation." *Id*. at 22.

HVG also documented and verified many aspects of its consumption of fish feed, and it did so with other documents apart from the missing fish feed receipts. *See id*. at 23-24. This included verification of monthly feed consumption amounts to the general ledger

24

and payment records, and verification of monthly feed movement reports. *See id.*

Thus, HVG documented and verified a large portion of its production and FOP information, including those items for which certain source documents had been discarded. Commerce can therefore reasonably rely on this information and apply partial facts available (including a partial "adverse" inference) to whatever information is missing or deemed unreliable.

Second, with regard to is misreported CONNUMs, HVG believes that its net weight "averaging" methodology was reasonable (and that Commerce should use HVG's net weights as reported). Nevertheless, the Court upheld Commerce's findings that HVG incorrectly reported its net weights. *See Slip Op.* at 64-77. That said, Commerce can revise HVG's net weights consistent with HVG's comments and the Court's holding. As noted earlier in these comments, HVG provided to the Department well in advance of the remand a revised Section C database incorporating the changes to the net weight field of the CONNUMs consistent with the Court's holding and consistent with the approach

25

advocated by Commerce. *See Advance Draft Remand Comments* at 3-6 (RCD 1-5; RPD 1) (Rejected), Appx_.

As HVG explained in submitting that revised database, HVG meticulously revised the net weights for the CONNUMS in the U.S. sales database to remove any "averaging" of the new weights, consistent with Commerce's proposed methodology. *See id*. And it had done so using only existing information. *See id*. HVG also highlighted the updated fields for transparency and convenience. *See id*. HVG did so to assist Commerce's efforts to use the revised Section C sales data for purposes of applying partial AFA rather than total AFA.

Yet, rather than consider this information, Commerce summarily rejected it, as unsolicited new factual information. *See CONNUM Rejection Letter* at 1-2 (RPD 3), Appx_. The Department refused to accept this information, claiming it was untimely unsolicited new factual information. *See id* at 1. Commerce was not legally precluded from accepting this information. On remand, Commerce has general authority to reopen the record on its own and it may do so even without specific direction from the Court. *See e.g.*, *Shandong Rongxin Imp. &*

26

*Exp. Co., Ltd. v. United States*, 203 F. Supp. 3d 1327, 1338 (Ct. Int'l Trade 2017).

This is particularly true where, as here, the information submitted was not actually "new" but was in fact pulled from underlying data already on the record. *See Advance Draft Remand Comments* at 4 (RCD 1-5; RPD 1) (Rejected), Appx_.

Commerce now summarily states that the databases are "unusable". *Final Remand* at 11. But, as noted above, Commerce has not thoroughly demonstrated this nor has it reasonably tried to plug the gaps using "partial facts available" to overcome data deficiencies so that it may use the underlying data, as the Court instructed that it consider. This is particularly true now that Commerce has abandoned two of the justifications that were central to its decision to use total AFA in the first place.

Finally, as also noted above, Commerce verified and reconciled all other critical aspects of HVG's U.S. sales databases, including the "total quantity and value" of such sales and the overall "completeness" of its U.S. sales. *See id.* at 10-13. In Commerce's own words, it "found no discrepancies." *Id.* at 13.

27

4. *Conclusion*

Thus, for all of these reasons, Commerce's decision to apply total AFA to HVG is arbitrary, unlawful, unsupported by substantial evidence, and otherwise unreasonable. Importantly, Commerce has now disregarded two of the most significant reasons justifying its decision to use total AFA in the first place. This includes Commerce's decision that it "cannot use HVG's Section C questionnaire responses to determine an accurate and reliable dumping margin" due mostly to HVG's purported failure "to cooperate in responding to request for information with respect to its relationship with its customers." See *Final Decision Memo*") (PD 547) at 28-29, Appx_.

It also includes Commerce's decision that HVG did "not have a reliable Section D database with which to calculate an accurate margin for HVG" due in large part to Commerce's finding that "the foundation of {HVG's} reporting is based on a mathematical impossibility" due to improper byproduct reporting. *Final Decision Memo* (PD 547) at 35, Appx_.

Both of these findings were central to Commerce's decision that it could not use HVG's databases and that it was therefore appropriate to

28

resort to total AFA. Commerce has now abandoned both of these reasons as justification for using total AFA. As noted above in detail, the remining justifications are not sufficient to support Commerce's decision to apply total AFA. Nor has Commerce reasonably sought to use partial AFA under the relevant legal standards.

Commerce has simply applied the highest AD rate of $3.87 per kg (which is more than 100%) to penalize HVG. As discussed in the next section of this brief, Commerce has harshly treated HVG as if it had never responded at all to any of the questionnaires. This is arbitrary.

## II. COMMERCE SHOULD NOT APPLY A TOTAL AFA RATE OF $3.87 PER KG AND IT HAS OTHERWISE FAILED TO ADEQUATELY EXPLAIN OR JUSTIFY ITS DECISION

Commerce continued to apply a highly punitive total AFA rate of $3.87 per kg in the *Final Remand*, which is unchanged from the rate used in the *Final Results*. *See Final Remand* at 19. Commerce's decision to do so is unsupported by substantial evidence, and otherwise not in accordance with law. We discuss this below.

As an initial matter, we note that Commerce's decision on this issue is only one paragraph long at the end of the remand. *See id*. Commerce appears to have added this paragraph as a mere

29

afterthought and without consideration of its new findings in its

remand. Indeed, Commerce now states only that it "continue{s} to find

that the $3.87/kg rate used in the *Final Results* is appropriate in light

of {its} findings outlined" earlier in its decision. *See id.*

More to the point, Commerce fails to take due account of the

record evidence or the law. While Commerce has much discretion in

selecting and applying a total AFA rate, Commerce's "discretion is not

without limits." *See BMW of North America LLC v. United States*, 926

F.3d 1291, 1301 (Fed. Cir. 2019). *See also Hyundai Steel Co. v. United

States*, 319 F. Supp. 3d 1327, 1355 (Ct. Int'l Trade 2018) (Commerce's

"discretion is not unbounded" in applying AFA).

Further, the AFA statute requires that Commerce undertake an

appropriate "evaluation of the situation" justifying the use of this highly

punitive AD rate. *See* 19 U.S.C. § 1677e(d)(2). This statutory

requirement "contemplates a *case-specific evaluation* as part of

Commerce's selection from among a range of rates." *See POSCO v.

United States*, 296 F. Supp. 3d 1320, 1349 (Ct. Int'l Trade 2018)

(emphasis added).

30

The Court in *POSCO* emphasized further that "*clearly some additional evaluation is required beyond that which justified the adverse inference*." *Id.* (emphasis added). Commerce itself recognizes in its *Final Remand* that this evaluation requirement means that Commerce must "review the record to determine if there {is} something inappropriate or unreasonable" about selecting the highest rate. *See Final Remand* at 28.

Commerce has not complied with these requirements. Commerce has selected the "highest margin" from a previous segment of this proceeding simply because it was the highest margin. *See Final Decision Memo* at 37 (PD 547) at 28-29, Appx_. Commerce has not bothered to look at any other rates for possible use as the AFA rate, and it certainly never looked at "a range of rates" as the *POSCO* Court suggests the statute contemplates. *See Posco*, 296 F. Supp. 3d at 1349. Nor has Commerce undertaken an "additional evaluation … beyond that which justified the adverse inference." *See id.*

Commerce's sole justification for selecting this highest rate is that Commerce determined "application of total AFA to HVG is warranted" and that "HVG failed to correct its deficiencies" and it

31

"otherwise did not act to the best of its ability." *See Final Remand* at 28-29. But these are the exact same findings Commerce used to justify total AFA in the first place. Commerce then simply states, without analysis, that "there is no record evidence which undermines the reasonableness of the use of that rate in this case." *Id.* at 29.

Commerce's analysis is unsupported by substantial evidence and otherwise deficient for many reasons. First of all, Commerce's analysis is backwards. Commerce first reaches the conclusion it seeks (*i.e.*, highest rate), and then proclaims there is "no record evidence" to undermine its decision. *See id.* Commerce should have first reviewed the evidence in light of the various "range of rates" it should have considered for this purpose, and then selected the most appropriate rate. Commerce failed to review the evidence and it failed to look at any other rates.

Moreover, Commerce ignored substantial "case-specific" record evidence suggesting that such a highly punitive rate was neither appropriate nor reasonable under the facts of this case. Indeed, HVG provided a massive amount of information in this case, including responding to no less than nine lengthy questionnaires and

32

supplemental questionnaires, and it provided "thousands of pages of documents, narratives, and exhibits during the course of this proceeding." *See HVG Rule 56.2 Brief,* ECF No. 38, at 17. HVG also provided "thousands of pages of more documents" during a 10-day verification. *Id.* HVG did not refuse to cooperate. While Commerce believes HVG has not cooperated to the best of its ability (a fact HVG disputes), HVG did nevertheless cooperate.

As noted earlier in this brief, HVG did not simply refuse to respond at all to the questionnaires. HVG responded and cooperated. Yet, Commerce has, in effect, treated HVG as if it had done nothing at all in this case. That is arbitrary and unreasonable.

Commerce should have considered these facts in selecting from among the most appropriate AFA rate, along with all of HVG's efforts in providing lengthy and timely submissions and its efforts to undertake a lengthy and grueling verification. Doing so would further the notion that AFA is not intended to be "punitive". *See BMW of North America LLC v. United States*, 926 F.3d 1291, 1301 (Fed. Cir. 2019). The point of AFA is to "deter non-compliance." *Id.*

33

Commerce has applied this very high rate of $3.87 per kg (equivalent to about 100%) simply because (1) it determined that AFA is appropriate in this case and (2) because this is the highest calculated rate from any prior segment of the proceeding. Commerce appears to have conflated (or confused) the "evaluation" requirement with the "corroboration" requirement. The two are not the same. And while Commerce need not corroborate the rate it selects, it must still evaluate whether that rate is the most appropriate rate (as compared to other rates) and whether it is otherwise appropriate and reasonable under the circumstances, as opposed to some other rates. *See* 19 U.S.C. § 1677e(d)(2).

This is particularly true for HVG now that Commerce is no longer relying on 2 of the 4 reasons it originally relied upon to apply total AFA to HVG. Certainly, the fact that Commerce has changed the basis of its reason for using total AFA merits at least a reconsideration of the AFA rate that it is applying.

34

## III.  **<u>CONCLUSION</u>**

Thus, for these reasons, we respectfully request that the Court

remand the case back to Commerce for reconsideration again consistent

with the arguments in this brief.

Respectfully submitted,

/s/ Robert L. LaFrankie
Robert L. LaFrankie

Crowell & Moring LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004
Tel:  (202) 624-2500
Email:  rlafrankie@crowell.com

*Counsel to Plaintiffs Hung Vuong
Group*

35

## UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE: HONORABLE M. MILLER BAKER, JUDGE

| | |
|---|---|
| HUNG VUONG CORPORATION, *et al.* | |
| Plaintiffs, | |
| v. | |
| UNITED STATES, | **Court No. 19-00055** |
| Defendant, | |
| and | |
| CATFISH FARMERS OF AMERICA, *et al.* | |
| Defendant-Intervenors. | |

## CERTIFICATE OF COMPLIANCE

Pursuant to U.S. Court of International Trade Rule 2(b)(2) of the Court's Standard Chambers Procedures, undersigned counsel for Plaintiff IDI, certifies this brief complies with the Court's type-volume limitation rules. This brief contains no more than 6507 words and therefore does not exceed 10,000 words. This brief also complies with all typeface requirements.

Respectfully submitted,

/s/ Robert L. LaFrankie
Robert L. LaFrankie

*Counsel to Plaintiffs, Hung
Vuong Corporation*