# UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:    THE HONORABLE M. MILLER BAKER, JUDGE

| | |
|---|---|
| ——————————————————— ) | |
| HUNG VUONG CORPORATION, ET AL., ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) | |
| UNITED STATES, ) | Court No. 19-00055 |
| ) Defendant, ) ) | |
| and ) ) | |
| CATFISH FARMERS OF AMERICA, ET AL., ) ) ) | |
| Defendant-Intervenors. ) ——————————————————— ) | |

## DEFENDANT'S RESPONSE TO PLAINTIFFS' COMMENTS ON COMMERCE'S REMAND REDETERMINATION

BRIAN M. BOYNTON
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

PATRICIA M. McCARTHY
Assistant Director

OF COUNSEL                         KARA M. WESTERCAMP
ASHLANDE GELIN                     Trial Counsel
Attorney                           U.S. Department of Justice
U.S. Department of Commerce        Commercial Litigation Branch

Office if the Chief Counsel for Trade        P.O. Box 480
   Enforcement and Compliance        Ben Franklin Station
1401 Constitution Avenue, NW              Washington, D.C.  20044
Washington, D.C. 20230                    Tel:  (202) 305-7571
                                          Fax: (202) 514-8264
                                          Email:
                                                kara.m.westercamp@usdoj.gov

June 30, 2021


                                          Attorneys for Defendant

## **TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES ................................................................. iii

BACKGROUND ......................................................................2

    I.      Commerce's Final Results And The Court's Remand Order ............2

    II.     Remand Redetermination ..................................................4

          A.     Source Documents And CONNUM-Specific Reporting ..........6

          B.     Customer Relationships And Factors Of Production Reporting ................................................................8

          C.     Application Of Total Adverse Facts Available....................... 11

ARGUMENT ......................................................................13

    I.      Applicable Legal Framework .............................................13

          A.     Standard Of Review ...............................................13

          B.     Facts Available With An Adverse Inference ...........................13

    II.     With Respect To The Bases For Applying Total Adverse Facts Available, Commerce's Remand Redetermination Complies With The Court's Remand Order ....................................................15

          A.     Substantial Evidence Supports Commerce's Determination That HVG's Significant Reporting Deficiencies Warrant Application Of Total Adverse Facts Available ...........................................16

          B.     Substantial Evidence Supports Commerce's Determination To Apply Total Adverse Facts Available, Rather Than Partial, Despite No Longer Relying On The Two Remanded Issues As Bases For Applying Total Adverse Facts Available ...............24

i

1.    The Remand Order Did Not Require Commerce To
Continue To Rely On The Two Remanded Issues As
Bases For Adverse Facts Available ...............................25

2.    Substantial Evidence Supports Commerce's Application
Of Total Adverse Facts Available ................................. 30

III.    The Adverse Facts Available Rate Of $3.87 Per Kilogram Is
Supported By Substantial Evidence And Is In Accordance With Law
........................................................................................ 34

CONCLUSION .................................................................................38

## **TABLE OF AUTHORITIES**

**CASES**                                                              **PAGE(S)**

*Acciai Speciali Terni S.P.A. v. United States*,
    142 F. Supp. 2d 969 (Ct. Int'l Trade 2001) ...................................................30

*Am. Silicon Techs. v. United States*,
    334 F.3d 1033 (Fed. Cir. 2003) ...................................................................25

*An Giang Fisheries Imp. & Exp. Joint Stock Co. v. United States*,
    287 F. Supp. 3d 1361 (Ct. Int'l Trade 2018) ................................... 19, 21, 36

*An Giang Fisheries Imp. & Exp. Joint Stock Co. v. United States*,
    333 F. Supp. 3d 1381 (Ct. Int'l Trade 2018) ......................................... 19, 21

*Carpenter Tech. Corp. v. United States*, No.,
    19-00200, 2021 WL 2231134 (Ct. Int'l Trade June 2, 2021) ......................26

*Changzhou Trina Solar Energy Co. v. United States*,
    466 F. Supp. 3d 1287 (Ct. Int'l Trade 2020) ......................................... 26, 29

*Changzhou Wujin Fine Chem. Factory Co. v. United States*,
    701 F.3d 1367 (Fed. Cir. 2012) ............................................................ 25, 29

*Consol. Edison Co. v. NLRB*,
    305 U.S. 197 (1938)....................................................................................13

*Consolo v. Fed. Mar. Comm'n*,
    383 U.S. 607 (1966)....................................................................................13

*Deacero S.A.P.I. de C.V. v. United States*,
    996 F.3d 1283 (Fed. Cir. 2021) ...................................................... 35, 37, 38

*GODACO Seafood Joint Stock Co. v. United States*,
    494 F. Supp. 3d 1294 (Ct. Int'l Trade 2021) ....................................... passim

*Heveafil Sdn. Bhd. v. United States*,
    58 F. App'x 843 (Fed. Cir. 2003) ...............................................................18

*Hung Vuong Corp. v. United States*,
    483 F. Supp. 3d 1321 (Ct. Int'l Trade 2020) .......................................... passim

*MacLean-Fogg Co. v. United States*,
    100 F. Supp. 3d 1349 (Ct. Int'l Trade 2015) ................................................13

*Mukand, Ltd. v. United States*,
    767 F.3d 1300 (Fed. Cir. 2014) ....................................................................32

*Nippon Steel Corp. v. United States*,
    337 F.3d 1373 (Fed. Cir. 2003) ............................................................ 14, 18

*Papierfabrik Aug. Koehler SE v. United States*,
    843 F.3d 1373 (Fed. Cir. 2016) ....................................................................35

*POSCO v. United States*,
    296 F. Supp. 3d 1320 (Ct. Int'l Trade 2018)................................................34

*Ta Chen Stainless Steel Pipe, Inc. v. United States*,
    298 F.3d 1330 (Fed. Cir. 2002) ....................................................................17

*Thuan An Prod. Trading & Serv. Co. v. United States*,
    348 F. Supp. 3d 1340 (Ct. Int'l Trade 2018)................................................20

*Ve Tic. Ltd. v. United States*,
    273 F. Supp. 3d 1225 (Fed. Cir. 2017).........................................................15

*Xi'an Metals & Mins. Imp. & Exp. Co. v. United States*,
    No. 20-00103, 2021 WL 2351098 (Ct. Int'l Trade June 9, 2021) ......... 21, 36

*Zhaoqing Tifo New Fibre Co. v. United States*,
    256 F. Supp. 3d 1314 (Ct. Int'l Trade 2017)................................................26

## **STATUTES**

19 U.S.C. § 1516a(b)(1)(B)(i) ................................................................................13

19 U.S.C. § 1677..................................................................................... passim

## REGULATIONS

19 C.F.R. § 351.301(c)(1) ................................................................... 4, 33

19 C.F.R. § 351.308(c) .........................................................................14

## OTHER AUTHORITIES

*Certain Frozen Fish Fillets from the Socialist Republic of Vietnam*,
      84 Fed. Reg. 18,007 (Dep't of Commerce Apr. 29, 2019) ............................2

Statement of Administrative Action (SAA),
      H.R. Doc. No. 103-316, vol. 1, at 870, *reprinted* in 1994 U.S.C.C.A.N. 4040
      ...............................................................................................................15

## UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:   THE HONORABLE M. MILLER BAKER, JUDGE

_____
                                          )
HUNG VUONG CORPORATION,                   )
ET AL.,                                   )
                                          )
              Plaintiffs,                 )
                                          )
       v.                                 )
                                          )
UNITED STATES,                            )          Court No. 19-00055
                                          )
              Defendant,                  )
                                          )
       and                                )
                                          )
CATFISH FARMERS OF AMERICA,               )
ET AL.,                                   )
                                          )
              Defendant-Intervenors.      )
_____)

## DEFENDANT'S RESPONSE TO PLAINTIFFS' COMMENTS ON COMMERCE'S REMAND REDETERMINATION

Defendant, the United States, respectfully responds to comments filed by the

plaintiffs, Hung Vuong Corporation, An Giang Fisheries Import & Export Joint

Stock Company, Europe Joint Stock Company, Asia Pangasius Company Limited,

Hung Vuong Ben Tre Seafood Processing Co., Ltd., Hung Vuong Sa Dec Limited

Company, Hung Vuong Vinh Long Company Limited, and Hung Vuong Mascato

Company Limited (collectively, HVG), HVG Comments, ECF No. 81, concerning

the Department of Commerce's remand redetermination filed in accordance with

this Court's decision and remand order in *Hung Vuong Corp. v. United States*, 483 F. Supp. 3d 1321 (Ct. Int'l Trade 2020).  *See* Final Results of Redetermination Pursuant to Court Remand, Apr. 2, 2021 (Remand Redetermination), ECF No. 75. For the reasons explained below, we respectfully request that the Court sustain Commerce's remand results and enter final judgment for the United States.

## BACKGROUND

### I.     Commerce's Final Results And The Court's Remand Order

HVG filed an action challenging certain aspects of Commerce's final results of the fourteenth administrative review of the antidumping duty order covering *Certain Frozen Fish Fillets from the Socialist Republic of Vietnam*, 84 Fed. Reg. 18,007 (Dep't of Commerce Apr. 29, 2019) (P.R. 556), and the accompanying Issues and Decision Memorandum (IDM) (P.R. 547).[1]  The period of review was from August 1, 2016, through July 31, 2017.  Specifically, HVG challenged Commerce's decision to apply a rate based on facts available with an adverse inference to HVG, and the resulting rate of $3.87 per kilogram.

On December 3, 2020, the Court issued its remand order.  The remand order sustained, in part, and remanded, in part, certain aspects of the final results.  *Hung Vuong*, 483 F. Supp. 3d at 1369-70.  The Court sustained Commerce's decision to apply facts available with an adverse inference with respect to HVG's failure to

---

[1] "P.R.__" refers to the public administrative record.

retain source documents as to feed consumption, production records, and sales correspondence, *id.* at 1348-53, and HVG's failure to report factors of production data on a control number (CONNUM)[2] specific basis. *Id.* at 1358-63.

However, the Court remanded two issues as lacking evidentiary support for application of facts otherwise available, that is, (1) the failure of HVG's customers to answer Commerce's questionnaires when Commerce gave no notice of the deficiency; and (2) Commerce's determination that HVG's by-product reporting had undermined *all* factors of production reporting. *See id.* at 1354 ("Commerce could not lawfully rely upon the failure of {HVG's} customers to answer Commerce's questionnaire as a basis to apply facts otherwise available when Commerce gave no notice of the deficiency."), *id.* at 1367 ("the problem is that Commerce rejected *all* the factors of production based on its finding that {HVG} could not explain the byproducts' weight gain, but there is nothing in the administrative record showing that Commerce considered (much less addressed) {HVG's} previously-offered explanation for that issue."). Although the Court recognized that "Commerce did make a finding that the problems it had with the administrative record were 'core' to {Commerce's} analysis and that it would be 'unduly difficult' to do anything other than to apply total facts otherwise available

---

[2] A CONNUM is a "control number" assigned to materially identical products to distinguish them from non-identical, that is, similar products.

with an adverse inference," *id.* at 1368-69, the Court stated that it was "unclear from the existing record whether there was substantial evidence permitting Commerce to resort to facts otherwise available—and, by extension, an adverse inference—" on the two remanded issues. *Id.* at 1369. Thus, Commerce was ordered to reconsider its application of facts available with an adverse inference (adverse facts available) to the two remanded issues, HVG's customer relationship and byproduct reporting, and determine whether partial adverse facts available would instead be appropriate. *Id.* By extension, the Court also remanded the adverse facts available rate of $3.87 per kilogram. *Id.*

## II.    **Remand Redetermination**

On February 25, 2021, HVG resubmitted its Section C sales databases in its pre-draft comments. *See* Remand P.R. 1.[3] On February 26, 2021, Catfish Farmers of America (CFA) requested that Commerce reject the submission as untimely new factual information, *see* Remand P.R. 2,[4] and that same day, Commerce rejected HVG's filing on the basis that HVG's resubmitted databases were untimely filed new factual information in violation of 19 C.F.R. § 351.301(c)(1). *See* Remand

---

[3] "Remand P.R.__" refers to the public administrative record for the remand proceeding.

[4] The submission pertained to information that was not subject to the remand order and that the Court had already sustained.

P.R. 3.  On March 1, 2021, HVG resubmitted its revised pre-draft remand comments, having removed the new factual information.  *See* Remand P.R. 4.

On March 16, 2021, Commerce issued draft remand results determining that total adverse facts available was appropriate and the $3.87 per kilogram rate was warranted.  *See* Remand P.R. 5.  Both CFA and HVG submitted comments on the draft remand results.  *See* Remand P.R. 6, 7.

On April 2, 2021, Commerce filed its remand redetermination.  Commerce reevaluated the record evidence and concluded that prior findings with respect to the failure of HVG's customers to respond to requests for information and HVG's by-product reporting were no longer bases for applying facts otherwise available with an adverse inference.  *See* Remand Redetermination at 14-18, 30.  Instead, Commerce determined that facts available with an adverse inference was appropriate based upon HVG's failure: (1) to retain and maintain source documents to verify U.S. sales and factors of production data; (2) to report accurate U.S. sales and factors of production data on a CONNUM-specific basis; (3) to maintain and report sales correspondence emails, purchase orders, and meetings with ultimate downstream customers in their characterization of customer relationships; and (4) to report accurate labor cost data.  *Id*. at 11-16.

## A.   <u>Source Documents And CONNUM-Specific Reporting</u>

First, Commerce explained that the Court had "fully sustained" Commerce's "decision to apply {adverse facts available} due to HVG's failure to maintain/retain source documents and failure to report accurately and completely its sales and {factors of production} data on a CONNUM-specific basis." *Id.* at 11. These deficiencies substantially undermine both the factors of production and sales databases Commerce relies on for its margin analysis, and effectively renders the databases "unusable." *Id.* With respect to the factors of production database, Commerce determined that the failure to maintain and provide production orders "prevent{ed} verification of the net weight CONNUM characteristic in the {factors of production} database, and likewise, the failure to maintain and provide fish feed source documents also prevented verification of that factor of production. *Id.* at 12. Turning to the U.S. sales database, Commerce explained that the failure to: (1) maintain and provide production/purchase orders prevented verification of the net weight CONNUM characteristic in the database; (2) maintain and provide sales correspondence emails "prevent{ed} verification of the terms of sale and the degree of involvement of {HVG's} customers and ultimate downstream customers in the sales process;" and (3) report its "net weight physical characteristic on a

CONNUM-specific basis" "prevented verification of the reported data, and significantly imped{ed} the proceeding." *Id.*

Commerce explained that the Court had sustained Commerce's determination that the databases were unreliable because substantial evidence supported Commerce's finding that HVG's factors of production data "'could not properly be tied to the finished products.'" *Id.* (quoting *Hung Vuong*, 483 F. Supp. 3d at 1360). In observing that this Court also recently sustained Commerce's application of total adverse facts available "based on {a respondent's} failure to report CONNUM-specific data properly" in the immediately preceding segment of this order, Commerce explained that "HVG's CONNUM reporting and failure to retain documents, *alone*, would warrant application of total {adverse facts available}." *Id.* at 13 (citing *GODACO Seafood Joint Stock Co. v. United States*, 494 F. Supp. 3d 1294, 1302 (Ct. Int'l Trade 2021) (*GODACO II*)) (emphasis added). Commerce also explained that "{d}espite being an experienced respondent in this proceeding, HVG {had} failed to maintain and provide important source documents, and these missing documents prevented verification of the U.S. sales and {factors of production} databases." *Id.* at 14. And with HVG's failure to report factors of production in the form and manner requested, *i.e.*, on a CONNUM-specific basis, Commerce continued to determine in the remand results that the factors of production and U.S. sales databases were

7

rendered "unreliable for calculating an accurate dumping margin because they cannot properly be tied to the finished products." *Id.* at 13; *see id.* ("Reliable sales and {factors of production} databases form the foundation of Commerce's dumping analysis, and without them Commerce cannot calculate an accurate dumping margin for HVG.").  Thus, Commerce determined that it had "no choice but to base its final dumping margin on total {adverse facts available}." *Id.* at 14.

### B.  <u>Customer Relationships And Factors Of Production Reporting</u>

Commerce next acknowledged that the Court had largely sustained its "findings with respect to HVG's reporting of its customer relationships and labor {factors of production}," with the exception of HVG's customers' failure to respond to Commerce's requests.  *Id.* at 14-15.  For example, the Court held that substantial evidence supported Commerce's determination that HVG's failure to maintain and provide (1) sales correspondence e-mails and (2) purchase orders, and also its (3) inaccurate reporting of "meetings with the ultimate downstream customers," "prevented verification of price negotiations, the terms of sale, and the extent and degree of customer involvement in the sales process." *Id.* at 14 (citing *Hung Vuong*, 483 F. Supp. 3d at 1353-55).

And although the Court held that Commerce could not use HVG's customers' failure to respond to Commerce's requests as grounds for applying total adverse facts available, Commerce explained that it continued to find that total

adverse facts available is warranted "because HVG {had} provided misleading statements, undermining the reliability of its reported information, and because the record is missing important source documents, preventing verification of the terms of sale and the degree of involvement of HVG's customers and ultimate downstream customers in the sales process." *Id.* at 15.  Commerce explained that it was not possible to apply partial facts available because "{w}ithout the ability to verify those data, and combined with HVG's failure to report accurate CONNUM information," Commerce "continue{d} to find the U.S. sales database unreliable in essential ways." *Id.*

Turning to the factors of production reporting, Commerce recognized that the Court had sustained Commerce's determination that "HVG did not properly report its labor {factor of production}, and that such a finding was a proper basis to apply facts available." *Id.*  In the remand results, Commerce determined that an adverse inference was warranted "because HVG {had} failed to maintain labor records in a manner that could accurately substantiate its reporting, and thus prevented verification of its labor {factor of production}." *Id.* at 16.

With respect to the byproduct reporting issue, Commerce explained that it considered "this question to be one of fact," and continued to find that "HVG did not provide documentation at verification to support its {factors of production} reconciliation." *Id.* at 17.  For example, Commerce did not dispute HVG's

argument that in processing whole live fish, byproducts may pick up water weight, but that "Commerce's ongoing concern relates to the *extent* to which HVG claims these outputs picked up water, which is a substantial percentage of the starting point." *Id.* (emphasis added). In terms of reconciling the "input/output data, while accounting for water weight," Commerce explained that the reconciliation worksheet did not (1) "provide an explanation of how the figures in this worksheet tie to or reconcile with those in the verification exhibits, *i.e.*, how the exhibit accounts for the millions of kilograms difference"; and (2) why "items not germane when reconciling total whole fish input to total fish outputs" were included in the worksheet, *i.e.*, packing and other non-fish items. *Id.* Consequently, "crucially, while HVG reported purchased whole fish in this worksheet, HVG did not include the weight of the self-harvested fish, which represents a sizeable portion of the whole fish input, thus making any total fish in/out reconciliation, in this worksheet, not possible." *Id.*

Commerce, therefore, explained that it continued to "have doubts about the accuracy of the reconciliation," but that "HVG's other verification failures are so substantial that it is unnecessary to rely on this verification finding in {its} determination that HVG's {factors of production} data are unusable, and that total

{adverse facts available} remains appropriate as a result of those other failures."
*Id.* at 18.

### C.   <u>Application Of Total Adverse Facts Available</u>

In summary, Commerce explained that it was no longer relying on its prior findings "with respect to HVG's by-product reporting and the failure of HVG's customer to respond" to information requests "because the numerous deficiencies" it described in the final results "and sustained by the Court, demonstrate that the application of total {adverse facts available} is still warranted." *Id.*; *id.* ("Thus, without regard to the by-product discussion, the record demonstrates that HVG's {factors of production} data (in addition to its sales reporting {}) are unreliable."). Commerce then continued to find that applying total adverse facts available was appropriate because "necessary information is missing from the record, {} HVG {had} withheld information requested, {} HVG {had} not provide{d} data in the form or manner requested," and HVG had "provided information which could not be verified," all of which had "significantly impeded the proceeding." *Id.* Commerce found that an adverse inference was warranted "because HVG {had} failed to collect, maintain and report information on the basis specified by Commerce, and, thus, {had} failed to cooperate to the best of its ability." *Id.* at 19.

In determining the adverse facts available rate to apply, Commerce continued to find that $3.87 per kilogram was appropriate because it was the

11

calculated rate from the new shipper review of the eighth administrative review in this proceeding, and "is the same rate applied, and upheld by the Court, to the uncooperative respondent in *GODACO II*." *Id.* (citing *GODACO II*, 494 F. Supp. 3d at 1303). Commerce considered and rejected HVG's arguments that the rate was inappropriate, explaining that it "may rely on information derived from the petition, a final determination in the investigation, a previous administrative review, or any other information placed on the record to assigned a rate as {adverse facts available}." *Id.* at 26. The $3.87 per kilogram rate likewise was not "aberrational" because "{i}n the underlying {new shipper review}, upon which the $3.87 {per kilogram rate} was based, Commerce made no finding that the sales under review were atypical, aberrational, or distortive, nor that they did not otherwise reflect commercial reality." *Id.* at 27. Moreover, Commerce explained that HVG had provided "no evidence to substantiate" the claim that the new shipper review rate "was extremely high, suggesting it was aberrational or distortive." *Id.* at 29.

As a result, because substantial evidence supports Commerce's determination that HVG had failed to cooperate to the best of its ability, thus rendering the company's databases unusable, Commerce determined that the assignment of the highest rate permitted by statute, $3.87 per kilogram, was reasonable. *Id*. at 26-29.

12

## ARGUMENT

### I.   Applicable Legal Framework

#### A.   Standard Of Review

In remand proceedings, the Court will sustain Commerce's determinations if they are "in accordance with the remand order," and are "supported by substantial evidence, and are otherwise in accordance with law."  *See MacLean-Fogg Co. v. United States*, 100 F. Supp. 3d 1349, 1355 (Ct. Int'l Trade 2015) (citing 19 U.S.C. § 1516a(b)(1)(B)(i)).  "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).  Substantial evidence may be "less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence."  *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966) (citations omitted).

#### B.   Facts Available With An Adverse Inference

Commerce applies facts otherwise available to fill gaps in the record if (1) necessary information is not available on the record, or (2) if an interested party withholds information that has been requested by Commerce, fails to provide such information in a timely manner or in the form or manner requested, significantly impedes the proceedings, or provides information that cannot be verified.  19

U.S.C. § 1677e(a).  If any one or more of the conditions are satisfied, Commerce may use facts available.  *Hung Vuong*, 483 F. Supp. 3d at 1337.  If Commerce also finds that a respondent has failed to cooperate "to the best of its ability to comply with a request for information," it may then apply an adverse inference from among its selection of facts available.  19 U.S.C. § 1677e(b).  The statute does not specify a required number of reporting deficiencies before Commerce may resort to facts available with an adverse inference.  *See id.* § 1677e(b).

Indeed, Commerce may apply an adverse inference for a respondent's "failure to cooperate to the best of respondent's ability, regardless of motivation or intent."  *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1382-83 (Fed. Cir. 2003).  A respondent fails to act to the best of its ability when it does not exert "maximum effort to provide Commerce with full and complete answers to all inquiries in an investigation."  *Id*.  Further, the standard requires that importers "conduct prompt, careful and comprehensive investigations of all relevant records that refer or relate to the imports in question to the full extent of the importers' ability to do so."  *Id*.

In selecting an adverse facts available rate, Commerce may rely on information from (1) the petition; (2) the final determination in the investigation; (3) any previous administrative review; or (4) any other information placed on the record.  *See* 19 U.S.C. § 1677e(b); 19 C.F.R. § 351.308(c).  When selecting an

adverse rate from among the possible sources, Commerce seeks to use a rate that is

sufficiently adverse to effectuate the statutory purpose of inducing respondents to

provide Commerce with complete and accurate information in a timely manner.

*See Ozdemir Boru San. Ve Tic. Ltd. v. United States*, 273 F. Supp. 3d 1225, 1245

(Fed. Cir. 2017). This ensures "that the party does not obtain a more favorable

result by failing to cooperate than if it had cooperated fully."  *See* Statement of

Administrative Action (SAA), H.R. Doc. No. 103-316, vol. 1, at 870, *reprinted* in

1994 U.S.C.C.A.N. 4040, 4199.

## II.  With Respect To The Bases For Applying Total Adverse Facts Available, Commerce's Remand Redetermination Complies With The Court's Remand Order

Commerce has complied with the Court's remand instructions.  *See*

*generally Hung Vuong*, 483 F. Supp. 3d at 1369-70.  The Court ordered Commerce

to reconsider its reliance on the (1) failure of HVG's customers to answer

questionnaires when Commerce did not issue a deficiency notice and (2) HVG's

by-product reporting, to determine whether such reconsideration would allow for

the application of partial, as opposed to total, adverse facts available.  *Id*. at 1368–

69.  As the Court ordered, Commerce reconsidered and no longer relies upon these

two issues as support for applying total adverse facts available.  *See* Remand

Redetermination at 14-18, 30.  Rather, Commerce determined that the "numerous,

significant reporting deficiencies across four major issue areas" warranted

15

application of "applying total {adverse facts available} independent of the by-product and customer relationship issues." *Id.* at 25.

However, HVG argues that with this approach, Commerce has failed to address the Court's concerns and that the remaining deficiencies do not support the application of total adverse facts available. *See* HVG Comments at 13-22. Relatedly, HVG argues that Commerce has not demonstrated that partial adverse facts available is not appropriate under the circumstances, and that Commerce failed to consider all contrary record evidence. *Id.* at 12, 22-28. As we explain below, HVG's arguments are without merit.

### A. Substantial Evidence Supports Commerce's Determination That HVG's Significant Reporting Deficiencies Warrant Application Of Total Adverse Facts Available

On remand, Commerce determined that the large number of HVG's identified reporting deficiencies, already sustained by the Court, warranted application of facts available with an adverse inference. *See* Remand Redetermination at 14-18, 30; *Hung Vuong*, 483 F. Supp. 3d at 1351, 1363. In the remand results, Commerce explained that HVG's failure to retain documents and to provide accurate CONNUM-specific reporting had undermined two crucial databases—the U.S. sales and factors of production databases—and had rendered them unusable for purposes of calculating a dumping margin. Remand Redetermination at 12. Moreover, Commerce explained that the Court had largely

sustained Commerce's application of adverse facts available with respect to HVG's customer relationships and labor factor of production reporting.  *Id.* at 14-18.

First, HVG argues that Commerce "overplays its hand" in relying on the Court's findings that the databases were unusable, and that "Commerce has not demonstrated with substantial evidence that 'none' of the data {are} unusable such that it would face 'undue difficulty' in plugging whatever gaps exist in HVG's records."  HVG Comments at 15-17.  Or in other words, HVG argues that the Court may have sustained a finding of facts available, but did *not* specifically sustain application of total adverse facts available.  *Id.* at 16.  HVG's reading of the Court's remand order is unavailing.

Regarding missing source documents, the Court held that "Commerce permissibly applied an adverse inference in connection with the missing feed consumption and production records documents."  *Hung Vuong*, 483 F. Supp. 3d at 1352.  As the Court explained, "{t}hat inference was permissible even if {HVG} had not been on notice of the requirement to maintain the discarded source documents, because {HVG's} questionnaire answers about its document retention policies were inaccurate."  *Id.*; *see also id.* at 1351 ("Substantial evidence therefore permitted Commerce to apply an adverse inference based on {HVG's} failure to retain these source documents, regardless of its business practices.");  *Ta Chen*

*Stainless Steel Pipe, Inc. v. United States*, 298 F.3d 1330, 1336 (Fed. Cir. 2002)

("it is reasonable in this case for Commerce to expect Ta Chen to preserve its

records in the event that Commerce itself would request them"); *Nippon Steel*

*Corp.*, 337 F.3d at 1382 (holding that companies will not be excused for inattentive

record keeping); *Heveafil Sdn. Bhd. v. United States*, 58 F. App'x 843, 849 (Fed.

Cir. 2003) (affirming application of adverse facts available for failure to maintain

"acceptable source documents").  In the remand results, Commerce explained that

the failure to maintain and provide source documents had "undermined" the U.S.

sales and factors of production databases, and had rendered them "unusable for

purposes of calculating an accurate dumping margin."  Remand Redetermination at

12.

Second, with respect to HVG's deficient CONNUM reporting, it is telling

that HVG concedes that it had submitted "prior to the remand a complete revised

Section C database resolving the CONNUM net weight issues, which was the

single biggest deficiency in its sales and cost databases other than the byproduct

concern."  HVG Comments at 18.  Rather than recognize that the Court sustained

Commerce's determination that HVG had *not*, in fact, reported its factors of

production on a CONNUM-specific basis, and that an adverse inference was

appropriate, *Hung Vuong*, 483 F. Supp. 3d at 1363, HVG argues that Commerce

should not have "rejected the {revised} database outright as unsolicited new

factual information." HVG Comments at 18. But HVG offers no authority, and

nor are we aware of any, that would permit a party to *cure* a deficiency in a remand

proceeding by submitting untimely new factual information despite the Court

already sustaining a finding of an adverse factual inference. *See Hung Vuong*, 483

F. Supp. 3d at 1363.

There can be no question that HVG has been on notice for several years that

data must be reported in a CONNUM-specific manner. Commerce began to

require respondents, and expressly told HVG, to report CONNUM-specific

information in the eleventh administrative review. *See* IDM at 29 n.209. The

Court sustained Commerce's determination with respect to HVG in the eleventh

administrative review, including its decision to require HVG to maintain records

on a CONNUM-specific basis. *See An Giang Fisheries Imp. & Exp. Joint Stock

Co. v. United States*, 287 F. Supp. 3d 1361, 1367-71 (Ct. Int'l Trade 2018) (*An

Giang I*) (sustaining all aspects of Commerce's determination except for its

adjustment to HVG's farming factors of production numerator); *An Giang

Fisheries Imp. & Exp. Joint Stock Co. v. United States*, 333 F. Supp. 3d 1381, 1385

(Ct. Int'l Trade 2018) (*An Giang II*) (sustaining Commerce's adjustment to HVG's

farming numerator). When another mandatory respondent failed to provide factors

of production on a CONNUM-specific basis in the immediately preceding segment

(thirteenth administrative review) of this order, the Court sustained Commerce's

application of an adverse inference as "reasonable because Commerce expected that {the respondent} would have collected and reported factors of production information on a CONNUM-specific basis after giving respondents advance notice for several years that CONNUM-specific information would be required in this administrative review." *GODACO II*, 494 F. Supp. 3d at 1302; *see also Thuan An Prod. Trading & Serv. Co. v. United States*, 348 F. Supp. 3d 1340, 1354 (Ct. Int'l Trade 2018) (sustaining Commerce's application of adverse facts available in the twelfth administrative review because "Golden Quality made a decision not to collect data in accordance with Commerce's chosen methodology, despite being notified multiple times of the {CONNUM-specific} requirement").

Indeed, in this administrative review, the Court expressly rejected HVG's arguments as to its excuses for not providing factors of production on a CONNUM-specific basis, explaining that HVG "has had even more time to revise its practices to come into compliance—if, after all, {HVG} had ample notice prior to the *11th* administrative review, then it had even more notice prior to this *14th* review." *Hung Vuong*, 483 F. Supp. 3d at 1362 (emphasis in original). The Court even stated that "{HVG} does not dispute that it did not report control numbers in the manner required by Commerce. If, as counsel said at oral argument, it would have been 'easy' for {HVG} to comply with Commerce's instructions, . . . then there was no excuse for failure to comply." *Id.* at 1363.

20

As a result, while HVG attempts to undermine the Court's remand order by arguing that Commerce could have accepted a revised Section C database in the remand proceedings, HVG Comments at 18-19, this argument entirely ignores the fact that the Court sustained Commerce's determination that HVG had "failed to report verifiable CONNUM-specific information in its U.S. sales and {factors of production} databases," and an adverse inference was warranted.  Remand Redetermination at 13; *see also Hung Vuong*, 483 F. Supp. 3d at 1363; *An Giang I*, 287 F. Supp. 3d at 1367-71; *An Giang II*, 333 F. Supp. 3d at 1385.  Indeed, in the remand results, Commerce explained that "the Court has fully sustained" the decision to apply adverse facts available "due to HVG's failure to maintain/retain source documents and failure to report accurately and completely its sales and {factors of production} data on a CONNUM-specific basis."  Remand Redetermination at 11.  Commerce continued that "{r}eliable sales and {factors of production} databases form the foundation of Commerce's dumping analysis, and without them Commerce cannot calculate an accurate dumping margin for HVG." *Id.* at 13; *see also Xi'an Metals & Mins. Imp. & Exp. Co. v. United States*, No. 20-00103, 2021 WL 2351098, at *8 (Ct. Int'l Trade June 9, 2021) ("Given Commerce's longstanding reporting requirements, of which {respondent} was or should have been aware, as well as Commerce's multiple requests for CONNUM-specific {factors of production} information and {respondent's} refusal to develop

an alternative reporting methodology, the court sustains Commerce's finding that {respondent} failed to cooperate and to act to the best of its ability, thereby justifying the use of {adverse facts available}.")

Third, HVG argues that Commerce's reliance on "other purported deficiencies," such as the labor factors of production and "certain documents relating to customer relationships," is not supported by substantial evidence. HVG Comments at 19-20. With respect to the customer relationships and labor factor of production reporting, HVG suggests that "Commerce can cure HVG's purported labor deficiencies by simply assuming an 8-hour day," and that Commerce "exaggerates the level and severity of any purported deficiencies remaining in the databases" based on questions regarding the customer relationships. *Id.* at 19-21.

However, in the remand results, Commerce explained that the Court had concluded that "substantial evidence supported Commerce's decision to apply {adverse facts available} with respect to HVG's reported relationship with its customers based on its failure to retain production orders and e-mail correspondence with its customers." Remand Redetermination at 14; *see also Hung Vuong*, 483 F. Supp. 3d at 1356 ("the Court concludes that substantial evidence in the administrative record permitted Commerce to apply an adverse inference as to {HVG's} relationship with its customers based on its failure to retain production orders and e-mail correspondence with its customers"), *id.*

("Similarly, the Court concludes that substantial evidence supported Commerce's determination to apply an adverse inference based on {HVG's} submission of inaccurate questionnaire answers regarding its relationship with downstream customers.").

Whereas, with respect to labor, Commerce acknowledged that the Court had sustained Commerce's determination that HVG had not properly reported its labor factor of production, but did not reach the question of whether the application of an adverse inference was appropriate, "as this issue was intertwined with the by-product issue."  Remand Redetermination at 15; *see also Hung Vuong*, 483 F. Supp. 3d at 1365.  But Commerce explained that it "continue{d} to find that HVG failed to cooperate to the best of its ability such that an adverse inference is warranted with regard to the labor {factor of production} because HVG {had} failed to maintain labor records in a manner that could accurately substantiate its reporting, and thus prevented verification of its labor {factor of production}."  Remand Redetermination at 16.

Thus, as Commerce explained in the remand results, the Court has already held that the U.S. sales and factors of production databases are unreliable as a result of HVG's CONNUM-specific reporting deficiency and failure to retain source documents.  *Id.* at 18; *see also Hung Vuong*, 483 F. Supp. 3d at 1368 (recognizing that problems with the administrative record were "core" to the

dumping analysis and that it would be "unduly difficult" for Commerce to do anything than to apply total adverse facts available).  There is substantial evidence on the record to indicate that not only are the databases unreliable, but that HVG had failed to comply with requests for information to the best of its ability. Remand Redetermination at 18.  HVG was well aware of the reporting methodology, had advance notice, and had provided no indication that it lacked the ability to comply.  *Id.*  As a result of the necessary information missing from the record, it was warranted for Commerce to continue to apply total adverse facts available.  *See id.*

### B. Substantial Evidence Supports Commerce's Determination To Apply Total Adverse Facts Available, Rather Than Partial, Despite No Longer Relying On The Two Remanded Issues As Bases For Applying Total Adverse Facts Available

In the remand results, Commerce's determination to continue applying total adverse facts available is supported by substantial evidence, although Commerce no longer relies on its prior findings with respect to HVG's by-product reporting and the failure of HVG's customers to respond to a request for information.  *See* Remand Redetermination at 15, 18.  HVG argues that Commerce cannot resort to total adverse facts available, let alone partial adverse facts available, "particularly now that Commerce is no longer even relying on two of {the} most critical prior findings."  HVG Comments at 13, 29.  Further, HVG argues that Commerce "has not actually considered and explained all of the relevant record evidence, including

24

that which fairly detracts from its decision." *Id.* at 22-28.  These arguments are without merit.

### 1.     The Remand Order Did Not Require Commerce To Continue To Rely On The Two Remanded Issues As Bases For Adverse Facts Available

Importantly, the Court did not hold that the two issues—one aspect of the customer relationship issue and the by-product issue—were "central" to Commerce's determination, *id.* at 27, rather, the Court held that "it is *unclear* from the existing record whether there was substantial evidence permitting Commerce to resort to facts otherwise available—and, by extension, an adverse inference" regarding these two issues.  *Hung Vuong*, 483 F. Supp. 3d at 1369 (emphasis added).

As a general matter, "{u}nless specifically directed by the court, Commerce has broad discretion to fully consider the issues remanded." *ABB, Inc. v. United States*, 273 F. Supp. 3d 1186, 1199 n.14 (Ct. Int'l Trade 2017), *aff'd*, 920 F.3d 811 (Fed. Cir. 2019).  As the United States Court of Appeals for the Federal Circuit has explained, "limited remands that restrict Commerce's ability to collect and fully analyze data on a contested issue" are "generally disfavor{ed}." *Changzhou Wujin Fine Chem. Factory Co. v. United States*, 701 F.3d 1367, 1374 (Fed. Cir. 2012); *see also Am. Silicon Techs. v. United States*, 334 F.3d 1033, 1039 (Fed. Cir. 2003) ("By sharply limiting Commerce's inquiry, the trial court's remand actually

prevented Commerce from undertaking a fully balanced examination that might

have produced more accurate results."); *Changzhou Trina Solar Energy Co. v.*

*United States*, 466 F. Supp. 3d 1287, 1301 (Ct. Int'l Trade 2020) (rejecting

plaintiff's argument that Commerce had "impermissibly" shifted its rationale in the

remand results).  *But see Zhaoqing Tifo New Fibre Co. v. United States*, 256 F.

Supp. 3d 1314, 1334 (Ct. Int'l Trade 2017) (holding that Commerce exceeded the

scope of the remand order by re-opening the record and reviewing a "settled issue"

that no party had appealed).  Here, the Court ordered that Commerce must

"thoroughly explain its rationale for whatever conclusion it reaches," as to whether

to apply facts available to the two remanded issues, and by extension, whether

partial or total adverse facts available would then be warranted.  *Hung Vuong*, 483

F. Supp. 3d at 1368-69.  The Court did not order that Commerce *must* continue to

apply factors otherwise available to the two remanded issues.  *See id.*; *see also*

*Carpenter Tech. Corp. v. United States*, No. 19-00200, 2021 WL 2231134, at *5

(Ct. Int'l Trade June 2, 2021) ("Given the broad language of the remand order and

the absence of limiting language, Commerce was permitted on remand to

reconsider those aspects of Venus's margin that resulted in the corrections at

issue.").

    In complying with the remand order, Commerce determined that the two

remanded issues were not necessary to its determination to apply total adverse

facts available.  First, with respect to the customer relationship issue, the Court

held that "Commerce could not lawfully rely upon the failure of {HVG's}

customers to answer Commerce's questionnaire as a basis to apply facts otherwise

available when Commerce gave no notice of the deficiency."  *Hung Vuong*, 483 F.

Supp. 3d at 1354.  The Court ordered Commerce to reconsider its decision to apply

facts otherwise available and whether it should apply partial facts available as to

HVG's customer relationships.  *Id.*

   As for the application of an adverse inference, in the final results, Commerce

had relied only on its findings of discarded emails and production orders, as well as

HVG's mischaracterization of downstream customers to demonstrate that HVG

had failed to cooperate to the best of its ability.  *Id*. at 1355.  The Court agreed that

these two findings provided substantial evidence to support the application of facts

available with an adverse inference.  *Id*. at 1356.  However, because 19 U.S.C.

§ 1677e(b)(1)(A) allows Commerce to apply an adverse inference only for

purposes of "selecting from among the facts otherwise available," and the Court

remanded one of those facts, the Court also remanded the decision "to apply an

adverse inference—regardless of whether substantial evidence in the

administrative record permitted that decision."  *Id*.

   On remand, Commerce explained that it no longer relied on the failure of

HVG's customers in responding to questionnaires, but continued to find that

application of adverse facts available was warranted given the numerous findings and reporting failures that had rendered the U.S. sales data unusable. *See* Remand Redetermination at 15. Commerce relied on findings already sustained by the Court in selecting from facts otherwise available to apply adverse facts available, such as HVG having provided misleading statements and undermining the reliability of its reported data by failing to retain source documents. *Id.*; *see also Hung Vuong*, 483 F. Supp. 3d at 1356. As Commerce explained in the remand results, HVG's failure to retain these documents prevented the verification of the terms of sales and the "degree of involvement of HVG's customers and ultimate downstream customers in the sales process." Remand Redetermination at 15. Considering the unverifiable data and HVG's failure to report accurate CONNUM-specific information, Commerce continued to find the U.S. sales database—an essential component to the dumping margin analysis—to be unreliable. *Id.*

For the second issue on remand, the Court sustained, in part, and remanded in part, Commerce's determination regarding HVG's inaccurate/unverifiable factors of production reporting. *Hung Vuong*, 483 F. Supp. 3d at 1367. The Court held that substantial evidence permitted Commerce to apply "facts otherwise available" to HVG's unverifiable labor costs. *Id.* at 1365. However, the Court held that Commerce could not use HVG's by-product weight reporting as the basis to discredit *all* factors of production. *Id.* at 1367.

Commerce then explained in the remand results why it continued to "doubt" the accuracy of HVG's input/output reconciliation, but explained that it was not necessary to rely on the by-product weight reporting discrepancy to find that HVG's factors of production data were unusable.  *See* Remand Redetermination at 17-18.  Rather, Commerce explained that "in a standalone discussion relating to CONNUM reporting deficiencies" in the verification report, Commerce had previously determined that it did not have "correct Section C and Section D databases with which to calculate an accurate margin for HVG."  *Id.* at 18.  Also, Commerce had separately determined "that various aspects of {factors of production} reporting were unverifiable" due to inadequate maintenance of production records and fish consumption.  *Id.*  As a result, Commerce determined that, "without regard to the by-product discussion, the record demonstrates that HVG's {factors of production} data (in addition to its sales reporting {}) are unreliable."  *Id.*

Thus, Commerce's determination that it did not need to rely on the remanded issues as facts available, was consistent with the Court's remand order.  *See Hung Vuong*, 483 F. Supp. 3d at 1368-69; *Changzhou Wujin Fine Chem. Factory Co.*, 701 F.3d at 1374; *Changzhou Trina Solar Energy Co.*, 466 F. Supp. 3d at 1301.  In other words, Commerce "considered its determination to apply total {adverse facts available}, explained how the information in the administrative

record supports its decision, and justified its reasoning for applying total {adverse facts available} independent of the by-product and customer relationship issues." Remand Redetermination at 25.

### 2. Substantial Evidence Supports Commerce's Application Of Total Adverse Facts Available

HVG argues that substantial evidence does not support application of total adverse facts available. HVG Comments at 12-15. Further, HVG argues that evidence on the record demonstrates that "Commerce verified and reconciled all other critical aspects of HVG's U.S. sales databases," and that Commerce ignored such contrary record evidence. *Id.* at 22-28.

In response to HVG's argument that Commerce verified "most" aspects of the sales data, *id.* at 21, HVG cannot dictate which source documents should or should not be verified. Remand Redetermination at 25; *see Acciai Speciali Terni S.P.A. v. United States*, 142 F. Supp. 2d 969 (Ct. Int'l Trade 2001) (explaining that respondents to an antidumping investigation have a statutory obligation to prepare a complete and accurate record in response to questions plainly asked). HVG mentions its daily production report among other documents to support its verification argument, but the Court sustained Commerce's determination that HVG's daily production report is inaccurate as a result of HVG's alternative reporting methodology, which it did not seek prior permission to use. *Hung Vuong*, 483 F. Supp. 3d at 1357, 1361; *see also* 19 U.S.C § 1677m(c)(1).

HVG further argues that large portions of its data were documented and verified, again ignoring the Court's holding and Commerce's determination that it had failed to comply with section 1677e(a)(2)(B) in providing information in the form and manner requested, *i.e.*, on a CONNUM-specific basis, despite years of notice. *Hung Vuong*, 483 F. Supp. 3d at 1359. As the Court recognized, HVG cannot dictate what information is necessary or sufficient for verification, and "to allow {HVG} to determine which source documents it will allow Commerce to examine at verification is to allow {HVG} to control this proceeding." *Id.* at 1350. HVG simply ignores the Court's holding when it requests that Commerce use incomplete, inaccurate, unverifiable, and untimely submitted information to conduct its dumping analysis.

In other words, HVG raises the same argument that the Court previously rejected, that is, while HVG believes that its alternative reporting methodology was reasonable and verifiable, that was of no consequence because HVG "essentially admits it opted not to follow Commerce's instructions and instead 'devised' its own reporting methodology." *Id.* at 1362. And "{w}hether {HVG} believes that methodology is 'more precise' is immaterial, as {HVG} has admitted it did not report information in the required form." *Id.* (citing 19 U.S.C. § 1677e(a)(2)(B) (referring to a respondent's failure to provide information "in the form and manner requested")).

31

Although HVG favorably cites *Mukand, Ltd. v. United States* to challenge Commerce's application of total adverse facts available, rather than partial, HVG Comments at 12-13, we agree that the "use of partial facts available is not appropriate when the missing information is core to the antidumping analysis and leaves little room for the substitution of partial facts available without undue difficulty." *Mukand, Ltd. v. United States*, 767 F.3d 1300, 1308 (Fed. Cir. 2014). U.S. sales and factors of production data are vital to calculating an antidumping margin, which the Court has already held were unreliable for HVG, *Hung Vuong*, 483 F. Supp. 3d at 1360, and which Commerce further explained in the remand results.

Indeed, as an end-run around its unreliable data, prior to Commerce's issuance of the draft remand results, HVG attempted to undermine the Court's holdings with respect to the reliability of the U.S. sales and factors of production databases by supplementing the record. HVG argues that its revised Section C database included CONNUM-specific reporting for the net weight issue, and was "consistent with the Court's holding and consistent with the approach advocated by Commerce." HVG Comments at 25-26. HVG claims that the rejection was arbitrary and unreasonable, and its consideration could have "rendered the sales and cost data at least partially usable." *Id.* at 19.

However, Commerce appropriately rejected HVG's unsolicited, revised Section C database as untimely new factual information, and that rejection was consistent with the Court's decision and Commerce's regulations.  *See* Remand Redetermination at 9; 19 C.F.R. § 351.301(c)(1).  Indeed, Commerce explained that "{u}nverifiable source documents and misrepresentations regarding customers relationships are not the type of quantifiable deficiencies that can be addressed with modifications to the existing databases –rather, they speak fundamentally to the credibility of the reported data themselves."  Remand Redetermination at 25-26.  Further, Commerce explained that because the Court had sustained its determination "that HVG's data are unusable, it is not possible to use any of HVG's data to determine its final dumping margin using partial {adverse facts available}."  *Id.* at 26.

Thus, substantial evidence continues to demonstrate that HVG, an experienced respondent, had failed to cooperate to the best of its ability by failing to retain source documents, failing to comply with Commerce's CONNUM-specific reporting (while indicating on the record that they are "easily" able to comply to reporting requirements), and providing information which could not be verified, such that HVG had significantly impeded the proceeding.  *See id*. at 18-19.  Substantial evidence provides that HVG's reporting deficiencies had undermined the reliability of two "core" components to the dumping analysis –

U.S. sales data and factors of production data, such that Commerce explained it was "not possible to apply partial facts available here."  *Id.* at 15; *see id.* at 25 (rejecting HVG's argument "that Commerce can remedy certain deficiencies using verified information, make reasonable assumptions about unverifiable information, or apply 'some sort of' unspecified partial {adverse facts available} calls").

## III.   The Adverse Facts Available Rate Of $3.87 Per Kilogram Is Supported By Substantial Evidence And Is In Accordance With Law

HVG's assigned adverse facts available rate of $3.87 per kilogram is supported by substantial evidence and is in accordance with law.  Remand Redetermination at 19, 26-29.  While the Court declined to address the arguments regarding the adverse facts available rate, *Hung Vuong*, 483 F. Supp. 3d at 1369, HVG argues that a rate of $3.87 per kilogram is punitive because it is too high.  *See* HVG Comments at 29.  HVG states that Commerce's "discretion is not without limits," and that the statute requires Commerce to undertake an "evaluation of the situation" to justify the adverse facts available rate.  *Id.*; *see also* 19 U.S.C. § 1677e(d)(2); *POSCO v. United States*, 296 F. Supp. 3d 1320, 1349 (Ct. Int'l Trade 2018) (explaining that Commerce must conduct a fact-specific inquiry in determining the adverse facts available rate and explain why the case justified the selection of the highest rate).  HVG also contends that Commerce failed to evaluate the circumstances and that the $3.87 per kilogram rate is extremely high. HVG Comments at 29.

"{A}s long as a rate is properly corroborated according to the statute, Commerce has acted within its discretion and the rate is not punitive." *Papierfabrik Aug. Koehler SE v. United States*, 843 F.3d 1373, 1382 (Fed. Cir. 2016). Consistent with the statute, Commerce selected a rate from a prior segment *i.e.*, a new shipper review related to the eighth administrative review of this proceeding, and evaluated the circumstances. Remand Redetermination at 26. That the rate selected was the highest rate applied in a prior segment of this proceeding is permitted by the statute and appropriate under the facts of this case. *See id.* at 26-27. Further, despite HVG's unsupported allegation, there was no evidence in the new shipper review that the sale underlying the new shipper rate of $3.87 per kilogram was "atypical, aberrational, or distortive" or that it did not reflect commercial reality. *Id.* at 27. Also, "Commerce was not required to select {HVG's adverse facts available} rate to reflect {HVG's} alleged commercial reality and, therefore, did not err in failing to do so." *Deacero S.A.P.I. de C.V. v. United States*, 996 F.3d 1283, 1301 (Fed. Cir. 2021).

Also, in evaluating the circumstances, Commerce was aware that the Court sustained the $3.87 per kilogram rate as adverse facts available in the immediately preceding administrative review of this order in *GODACO II*, 494 F. Supp. 3d at 1301. In *GODACO II*, Commerce had applied the $3.87 per kilogram adverse facts available rate to a Vietnamese respondent that, similarly to HVG, had failed

to collect and report factors of production information on a CONNUM-specific basis. *Id*. The Court had emphasized that GODACO had advance notice from Commerce for several years that CONNUM-specific information would be required, and that GODACO had no excuse for not providing the CONNUM-specific reporting in the form and manner requested by Commerce. *Id*. Similarly, HVG had advance notice by the time of this fourteenth administrative review "of Commerce's preference for CONNUM-specific reporting and had enough time to come into compliance." *An Giang I*, 287 F. Supp. 3d at 1369–70; *see also Hung Vuong*, 483 F. Supp. 3d at 1362; *Xi'an Metals*, 2021 WL 2351098, at *8.

Despite its refusal to provide CONNUM-specific reporting to Commerce, HVG's counsel admitted to the Court at oral argument that "it would have been easy for the company to report data in the way Commerce required because it would have essentially just required hitting 'a few buttons' on the company's computer system." *Hung Vuong*, 483 F. Supp. 3d at 1357 n.37. And indeed, HVG belatedly attempted to provide CONNUM-specific reporting in the form and manner Commerce had *originally* requested as unsolicited new factual information on remand, which Commerce properly rejected. *See* Remand Redetermination at 9; *see also* HVG Comments at 25-26 (admitting that new databases "incorporat{ed} the changes to the net weight field of the CONNUMs consistent with the Court's holding and consistent with the approach advocated by

Commerce"). Ensuring that a respondent does not benefit from its own lack of cooperation satisfies application of adverse facts available. Remand Redetermination at 19, 26-27; *Hung Vuong*, 483 F. Supp. 3d at 1369. Here, it was within HVG's control to report data in the form and manner requested by Commerce, yet it failed to do so.

Nonetheless, HVG describes the "massive" amount of information provided to Commerce, including "thousands of pages" of documents during a 10-day verification, and asserts that it "did not simply refuse to respond at all to the questionnaires. HVG responded and cooperated." *See* HVG Comments at 33. For that reason, HVG advocates that Commerce should have considered its voluminous submissions when selecting from among the most appropriate adverse facts available rate. *Id.* Problematically for HVG, however, is that it failed to provide necessary information in the manner and form requested by Commerce multiple times, significantly impeded the proceeding, and provided information that could not be verified. *See* Remand Redetermination at 18-19; *see also* 19 U.S.C. § 1677e(a)(1) and (2)(A)-(D); *Deacero*, 996 F.3d at 1301 (affirming that the highest petition rate as the adverse facts available rate was supported by substantial evidence because the respondent had ""mischaracterized,' 'misrepresented,' and 'withheld critical information from Commerce' and, . . . further, that Deacero

failed to produce any records to support or clarify its representations when given the opportunity to do so").

Thus, substantial evidence supports Commerce's determination that total adverse facts available is warranted and that the $3.87 per kilogram rate is consistent with the statute and is appropriate because HVG, an experienced respondent, despite notice, failed to collect, maintain, and report information in the manner specified by Commerce and therefore failed to cooperate to the best of its ability. *See* Remand Redetermination at 27. "As Commerce has properly corroborated {HVG's adverse facts available} rate," because it was a rate applied in a prior segment of this proceeding, "Commerce acted within its discretion in its selection of that {adverse facts available} rate." *Deacero*, 996 F.3d at 1300; *see* Remand Redetermination at 19, 26-29.

## <u>CONCLUSION</u>

For these reasons, we respectfully request that the Court sustain Commerce's Remand Results and enter final judgment in favor of the United States.

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General


JEANNE E. DAVIDSON
Director

38

s/Patricia M. McCarthy
PATRICIA M. McCARTHY
Assistant Director

OF COUNSEL:                                    s/Kara M. Westercamp
ASHLANDE GELIN                                 KARA M. WESTERCAMP
Attorney                                       Trial Attorney
U.S. Department of Commerce                    U.S. Department of Justice
Office of the Chief Counsel for Trade          Civil Division
    Enforcement and Compliance                 Commercial Litigation Branch
1401 Constitution Avenue, NW                   P.O. Box 480
Washington, D.C. 20230                         Ben Franklin Station
                                               Washington D.C. 20044
                                               Tel: (202) 305-7571
                                               Fax: (202) 514-8264
                                               Email: kara.m.westercamp@usdoj.gov


June 30, 2021                                  Attorneys for Defendant

## UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:   THE HONORABLE M. MILLER BAKER, JUDGE

| | | |
|---|---|---|
| _____ | ) | |
| HUNG VUONG CORPORATION, ET AL., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES, | ) | Court No. 19-00055 |
| | ) | |
| Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| CATFISH FARMERS OF AMERICA, ET AL., | ) | |
| | ) | |
| Defendant-Intervenors. | ) | |
| _____ | ) | |

## **ORDER**

Upon consideration of the comments in opposition to Commerce's second remand redetermination, defendant's comments in support of the second remand redetermination, , and all other pertinent papers, it is hereby

ORDERED that Commerce's remand redetermination is sustained.

Dated: _____          _____
       New York, New York                              Judge

## CERTIFICATE OF COMPLIANCE

I hereby certify, pursuant to section 2(B)(1) of the Standard Chambers Procedures of this Court, that this brief contains 8,309 words, excluding the table of contents, table of authorities, any addendum containing statutes, rules or regulations, any certificates of counsel, and counsel's signature, as calculated by the word processing system used to prepare this brief (Microsoft Word).

s/ Kara M. Westercamp
KARA M. WESTERCAMP
Trial Attorney
Department of Justice
Civil Division
