Slip Op. 21-142

UNITED STATES
COURT OF INTERNATIONAL TRADE

Court No. 19-00055

HUNG VUONG CORPORATION, *et al.*,

*Plaintiffs*,

v.

UNITED STATES,

*Defendant*,

and

CATFISH FARMERS OF AMERICA, *et al.*,

*Defendant-Intervenors.*

Before: M. Miller Baker, Judge

OPINION

[The court sustains Commerce's remand results and enters judgment for Defendant and Defendant-Intervenors.]

Dated: October 12, 2021

*Robert L. LaFrankie*, Crowell & Moring LLP of Washington, DC, submitted comments for Plaintiffs.

*Brian M. Boynton*, Acting Assistant Attorney General; *Jeanne E. Davidson*, Director; *Patricia M. McCarthy*, Assistant Director; and *Kara M. Westercamp*, Trial Counsel, Commercial Litigation Branch, Civil

Division, U.S. Department of Justice of Washington, DC, submitted comments for Defendant. Of counsel on the comments was *Ashlande Griffin*, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce of Washington, DC.

*Jonathan M. Zielinski* and *James R. Cannon, Jr.*, Cassidy Levy Kent (USA) LLP of Washington, DC, submitted comments for Defendant-Intervenors.

*Baker*, Judge: Like comets that orbit the sun, trade cases make periodic return visits to the court. In this return visit after a remand to the Department of Commerce in an administrative review, a Vietnamese fish producer challenges Commerce's continued application of facts otherwise available with an adverse inference due to the company's reporting deficiencies and failure to cooperate. The court sustains the Department's remand results as supported by substantial evidence.

## Factual and Procedural Background

This is the sequel to *Hung Vuong Corp. v. United States*, 483 F. Supp. 3d 1321 (CIT 2020), which addressed Hung Vuong's challenge to Commerce's final determination in the 14th administrative review of an antidumping order as to certain frozen fish fillets from Vietnam. Summarized, the Department found, *inter alia*, that it could not verify information the company submitted, that the administrative record was incomplete in several respects, and that the information deficiencies resulted from the company's failure to

cooperate to the best of its ability. Commerce therefore rejected all the company's submissions, resorted to the use of total facts otherwise available with an adverse inference, or total adverse facts available (in the Department's jargon, "total AFA"), and assigned Hung Vuong a dumping margin of $3.87 per kilogram, or about 100 percent. *Id.* at 1332–33.

This court sustained most of Commerce's findings underlying its application of total adverse facts available. Even so, the court remanded the case to Commerce to reconsider whether partial adverse facts available might be necessary because two of the Department's findings were unsupported by substantial evidence or contrary to law.

First, the Department could not rely on the failure of Hung Vuong's customers to respond to Commerce's questionnaires to apply total adverse facts available. *Id.* at 1354–56. But because that finding by the Department was just one of several reasons why it applied total adverse facts available, the court remanded to Commerce to reconsider whether partial adverse facts available might be necessary. *Id.*

Second, the Department's rejection of Hung Vuong's factors of production because of concerns over the company's fish byproducts' water-weight gain was not supported by substantial evidence in view of Commerce's failure to address the company's explanation for the problem. *Id.* at 1365–66. As "Commerce viewed this issue as essential to its analysis," the court could not sustain the Department's "decision to apply total facts otherwise available as to Hung Vuong's factors of

production." *Id.* at 1367. The court therefore remanded for Commerce to address Hung Vuong's explanation, to consider whether it might be necessary to apply partial, rather than total, facts otherwise available, and by extension "to consider the extent to which its conclusion as to that submission affects its decision on the adverse inference as to the factors of production, including whether a partial or total adverse inference is justified . . . ." *Id.*

As the court directed Commerce to reconsider whether application of total facts otherwise available remained reasonable, the court also directed the Department on remand to reconsider the rate applied to Hung Vuong, which was based on the finding of total adverse facts available. *Id.*

## Proceedings on Remand

On remand, Hung Vuong submitted comments to Commerce and included a new "corrected" U.S. sales database it claims addressed the Department's concerns. ECF 88, at 9–10. Commerce rejected the database as "untimely filed new factual information" and ultimately reaffirmed its original determination applying total facts otherwise available with an adverse inference and an antidumping rate of $3.87/kg. *See* ECF 75-1, at 9, 30 (remand results).

### A. Total versus partial facts otherwise available with an adverse inference

Critically, on remand Commerce concluded that Hung Vuong's control number reporting deficiencies "and failure to retain documents, *alone*, warranted

continued application of total [facts otherwise available with an adverse inference]." *Id.* at 13 (emphasis added). The Department noted that the court had sustained Commerce's finding that Hung Vuong's databases were unreliable for calculating a dumping margin. *Id.* "Reliable sales and [factors-of-production] databases form the foundation of Commerce's dumping analysis, and without them Commerce cannot calculate an accurate dumping margin for [Hung Vuong]." *Id.*

As to Hung Vuong's reporting deficiencies regarding its customer relationships, the Department continued to find that "total AFA is warranted" even without consideration of the customers' failure to respond to Commerce's questionnaires—one of the issues remanded by the court. *Id.* at 15. The Department qualified this determination, however, by *also* relying on the company's "failure to report accurate [control number] information" to apply total adverse facts available. *Id.*

As to the byproducts issue on which the court also remanded, Commerce stated that although it believed Hung Vuong's "explanation does not plausibly account for the observed weight difference, we find that [the company's] other verification failures are so substantial that it is unnecessary to rely on this verification finding in our determination that [the company's factors-of-production] data are unusable, and that total

AFA remains appropriate as a result of those other failures." *Id.* at 18.[1]

Thus, the Department withdrew its reliance on the "customer questionnaires" and "byproducts" issues, but determined that its overall findings of "numerous deficiencies" that the court already sustained "demonstrate that the application of total AFA is still warranted." *Id.* at 18. Commerce cited a section of its issues and decision memorandum related to Hung Vuong's failure to report accurate control numbers (which the court sustained, *see* 483 F. Supp. 3d at 1357–63) that read, in part, "we find that we do not have correct Section C and Section D databases with which to calculate an accurate margin for [Hung Vuong]," ECF 75-1, at 18 (quoting ECF 25-5, at 32), and also cited a discussion of how substantial portions of Hung Vuong's data were unverifiable because of failure to maintain source documents, *id.* (citing ECF 25-5, at 19–21).

Responding to the parties' administrative case briefs on remand, the Department rejected Hung Vuong's arguments that application of partial facts otherwise available (with or without an adverse

---

[1] Commerce also observed its prior finding of total adverse facts available based on deficiencies in Hung Vuong's factors of production reporting was based on the water weight discrepancy *and* deficiencies in the company's labor reporting, the latter of which the court sustained. ECF 75-1, at 15–16. The Department continued to find Hung Vuong's labor reporting deficiencies warranted an adverse inference, *id.* at 16, but notably did not apply total adverse facts available based on these deficiencies.

inference) was a viable way to resolve Commerce's concerns:

> Unverifiable source documents and misrepresentations regarding customers [sic] relationships are not the type of quantifiable deficiencies that can be addressed with modifications to the existing databases—rather, they speak fundamentally to the credibility of the reported data themselves. Because we have determined (and the Court has sustained our determination) that [Hung Vuong's] data are unusable, it is not possible to use any of [Hung Vuong's] data to determine its final dumping margin using partial AFA.

*Id.* at 26.

In short, the Department concluded that it would continue to apply total facts otherwise available with an adverse inference to Hung Vuong despite no longer relying on its findings on the "customer questionnaire" and "byproduct reporting" issues.

### B. The rate applied

Commerce then addressed its selection of the $3.87/kg rate. First, the Department rejected Hung Vuong's argument that the circumstances under which the rate was calculated—a "new shipper review" from the eighth administrative review of the same antidumping order—rendered the rate inappropriate, noting that the relevant statute allows Commerce to use any dumping margin from any segment of the proceeding, "including the highest such margin," without

regard to what the margin might have been had the offending respondent fully cooperated and without regard to that respondent's "alleged commercial reality." *Id.* at 26–27.

Second, Commerce rejected Hung Vuong's argument that the $3.87/kg rate was so high as to be "aberrational" and thus inappropriate, noting that part of the analysis in a "new shipper review" involves "a 'totality of the circumstances test' to determine if a sale involved in [a new shipper review] is 'unrepresentative or extremely distortive,' so as to suggest the transaction should be excluded as a *non–bona fide* sale," and explained that in the review leading to the $3.87/kg rate the Department made no finding that the sales in question "were atypical, aberrational, or distortive, nor that they did not otherwise reflect commercial reality." *Id.* at 27.

Third, Commerce rejected Hung Vuong's contention that the Department had failed to "evaluate the situation" as required by 19 U.S.C. § 1677e(d)(2).[2] ECF 75-1, at 26. Citing *POSCO v. United States*, 335 F. Supp. 3d 1283, 1285–86 (CIT 2018), Commerce stated that it interprets the phrase "evaluation of the situation" to require it, "as part of its determination of applying the highest rate, to review the record to

---

[2] This provision directs that Commerce may use any dumping margin from any segment of the proceeding under the applicable antidumping order, "including the highest such rate or margin, based on *the evaluation by [the Department] of the situation that resulted in [Commerce] using an adverse inference in selecting among the facts otherwise available.*" 19 U.S.C. § 1677e(d)(2) (emphasis added).

determine if there was something inappropriate or otherwise unreasonable about that rate, given the situation leading to the application of an adverse inference." ECF 75-1, at 28.

Commerce further explained that it applied total adverse facts available because it could not use Hung Vuong's information in its calculations, and the company failed to correct the deficiencies despite having the opportunity to do so. Commerce also noted that the statute allows for the selection of any dumping margin from any prior segment of the proceeding, including the highest margin, as an "adverse inference rate." *Id.* at 29. "Thus, the only question outstanding is if the record suggests that the rate applied to [Hung Vuong], $3.87/kg, is otherwise inappropriate." *Id.*

The Department found that no record evidence undermined the rate's reasonableness and that while the company complained that the rate was extremely high, "suggesting that it was aberrational or distortive, [Hung Vuong] provides no evidence to substantiate that claim." *Id.* Accordingly, Commerce concluded that it would continue (1) to apply total facts otherwise available with an adverse inference to Hung Vuong despite no longer relying on its findings on the "customer questionnaire" and "byproduct reporting" issues and (2) to apply the $3.87/kg rate. *Id.* at 29–30.

## Jurisdiction and Standard of Review

The court has jurisdiction under 19 U.S.C. § 1516a(a)(2)(B)(iii) and 28 U.S.C. § 1581(c), which vest this court with authority over actions contesting

Commerce's final determination in an administrative review of an antidumping duty order. The court is to uphold Commerce's determination unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law . . . ." 19 U.S.C. § 1516a(b)(1)(B)(i).

"Substantial evidence" has the same meaning it does in a pre-remand proceeding. "[T]he question is not whether the court would have reached the same decision on the same record—rather, it is whether the administrative record as a whole permits Commerce's conclusion." *Hung Vuong*, 483 F. Supp. 3d at 1343.

> Substantial evidence has been defined as more than a mere scintilla, as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. To determine if substantial evidence exists, we review the record as a whole, including evidence that supports as well as evidence that fairly detracts from the substantiality of the evidence.

*Id.* (quoting *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1379 (Fed. Cir. 2003)).

### Discussion

Hung Vuong asserts two challenges to Commerce's remand results. First, the company argues that the Department's continued application of total facts otherwise available with an adverse inference, or "total AFA," is unsupported by substantial evidence and contrary to law. ECF 88, at 11–29. Second, Hung Vuong contends that Commerce failed to adequately explain

or justify its selection of the $3.87/kg rate dumping rate. *Id.* at 29–34.

## I.

### A.

Hung Vuong's first line of attack on Commerce's continued finding of total adverse facts available is that because the company submitted a revised and corrected Section C database "resolving the [control number] net weight issues, which was the single biggest deficiency in its sales and cost databases other than the byproduct" issue, *id.* at 18, the Department could have "determine[d] the feasibility of applying partial AFA." *Id.* Commerce, however, declined to do so because the database was "unsolicited new factual information." *Id.* Hung Vuong contends that this rejection was "arbitrary and unreasonable because it could have resolved the main remaining reporting deficiency in the data (*i.e.* [control numbers]), thus rendering the sales and costs data at least partially usable." *Id.* at 19 (citing Remand Appx1439–1441).

The government, in response, argues that Hung Vuong has offered no authority, nor is the government aware of any, "that would permit a party to *cure* a deficiency in a remand proceeding by submitting untimely new factual information despite the Court already sustaining a finding of an adverse factual inference." ECF 89, at 19 (emphasis in original) (citing 483 F. Supp. 3d at 1363).

Whether to allow Hung Vuong to submit a revised database was a decision for Commerce, not for the

court: "The decision whether to reopen the record is ordinarily one for the agency to make . . . ." *GGB Bearing Tech. (Suzhou) Co. v. United States*, 279 F. Supp. 3d 1233, 1251 (CIT 2017). The remand order here neither instructed the Department to reopen the record nor prohibited Commerce from doing so. The Department need not reopen the record with respect to issues the court has already decided. *See Jinxiang Yuanxin Imp. & Exp. Co v. United States*, 71 F. Supp. 3d 1338, 1355 (CIT 2015).

Despite complaining that Commerce did not accept the revised database, Hung Vuong nowhere argues that the Department was obligated to do so, or that Commerce abused its discretion, aside from the five-word conclusory statement "[t]his was arbitrary and unreasonable." ECF 88, at 19. Contrary to Hung Vuong's unsupported assertion, Commerce's exercise of its discretion to decline to receive the company's new information was neither arbitrary nor unreasonable, as it was for the Department to determine how to conduct proceedings on remand.

### B.

Hung Vuong next challenges Commerce's reliance on the company's deficiencies in its reported labor factors of production and customer relationship documents for finding total adverse facts available. ECF 88, at 19–22. The company's arguments, however, are misplaced because the Department's remand results do not rely on either the labor or customer relationship reporting deficiencies *alone* to apply *total* adverse facts available. *See* ECF 75-1, at 15 (applying

total adverse facts available based on the customer reporting deficiencies *coupled with* the company's "failure to report accurate [control number] information"); *see also above* note 1 (explaining that Commerce did not apply total adverse facts available based on the labor reporting deficiencies).

## C.

Hung Vuong's third and final challenge to Commerce's continued application of total adverse facts available is that the Department overlooked all the contrary evidence in the record contradicting its continued application of total adverse facts available based on the company's control number reporting deficiencies and failure to retain source documents. ECF 88, at 22–77. This line of attack, however, seeks to impermissibly relitigate issues the court already resolved in its prior opinion sustaining Commerce's findings on those issues.

\* \* \*

The government argues, and the court agrees, that Commerce's determination that it did not need to rely on the remanded issues to apply total adverse facts available "was consistent with the Court's remand order." ECF 89, at 29. The Department reconsidered its determination to apply adverse facts available and explained how the record supported its determination even without reliance on the remanded issues. *Id*. Substantial evidence supports that determination, and therefore the court sustains the Department's remand results applying total adverse facts available based on

**Ct. No. 19-00055** **Page 14**

Hung Vuong's control number reporting deficiencies "and failure to retain documents." ECF 75-1, at 13.

## II.

The remaining issue is Commerce's selection of the $3.87/kg rate, which Hung Vuong characterizes as "highly punitive." ECF 88, at 32.[3] The company challenges that rate on three grounds.

First, Hung Vuong argues that Commerce violated the statutory requirement that it undertake an appropriate "evaluation of the situation." ECF 88, at 30 (discussing 19 U.S.C. § 1677e(d)(2)). Citing *POSCO v. United States*, 296 F. Supp. 3d 1320 (CIT 2018), the company argues that "<u>some additional evaluation is required beyond that which justified the adverse inference</u>." ECF 88, at 31 (double emphasis in the original and quoting *POSCO*, 296 F. Supp. 3d at 1349).

---

[3] That the $3.87/kg rate is significantly higher than the $2.39/kg Vietnam-wide rate is not disqualifying because the Federal Circuit "has made clear . . . that Commerce need not select, as the AFA rate, a rate that represents the typical dumping margin for the industry in question." *KYD, Inc. v. United States*, 607 F.3d 760, 765–66 (Fed. Cir. 2010); *see also id.* at 766 ("Significantly, we have held that Commerce is permitted to use a 'common sense inference that the highest prior margin is the most probative evidence of current margins because, if it were not so, the importer, knowing of the rule, would have produced *current* information showing the margin to be less.' " (quoting *Rhone Poulenc, Inc. v. United States*, 899 F.2d 1185, 1190 (Fed. Cir. 1990) (emphasis in *Rhone Poulenc*))).

The court reads *POSCO* as holding that Commerce may not simply rely on its adverse inference to select a rate. Instead, the Department must "evaluate the situation that resulted in" the adverse inference. 19 U.S.C. § 1677e(d)(2).

Commerce did that here: "As we explain above . . . [the Department] was unable to use the information [Hung Vuong] provided in is calculations," and the company "failed to correct its deficiencies when it had the opportunity," and "otherwise failed to act to the best of its ability." ECF 75-1, at 28–29; *see also id.* at 26 ("Because we have determined (and the Court has sustained our determination) that [Hung Vuong's] data are unusable, it is not possible to use any of [that] data to determine its final dumping margin . . . ."); *cf. Deacero S.A.P.I. de C.V. v. United States*, 996 F.3d 1283, 1300–01 (Fed. Cir. 2021) ("Commerce considered the unique factual circumstances of Deacero's situation and its level of culpability and concluded that the highest Petition rate was appropriate.") (cleaned up).

Second, Hung Vuong complains that Commerce disregarded the extent of the company's cooperation with the review. The Federal Circuit has emphasized, however, that there is no fixed single formula Commerce must use in deciding what rate is appropriate for an uncooperative respondent—"neither the statute nor the pertinent regulations address the weight to be given to different degrees of cooperation." *Heveafil Sdn. Bhd. v. United States*, 58 F. App'x 843, 849–50 (Fed. Cir. 2003). In *Heveafil*, the court rejected a respondent's contention that its *partial* cooperation meant Commerce could not apply the possible highest

**Ct. No. 19-00055** **Page 16**

margin. It follows, therefore, that, in this case, the Department permissibly selected the highest possible rate notwithstanding the company's production of many documents and participation in an extensive verification on site in Vietnam.

Hung Vuong's final challenge is that Commerce "failed to look at any other rates." ECF 88, at 32. Hung Vuong offers no suggestion as to what "range of rates" Commerce should have considered (other than a vague reference to "some other rates," *id.* at 34) nor any citation to the administrative record that might justify some other figure. *Cf. Shanghain Taoen Int'l Trading Co. v. United States*, 360 F. Supp. 2d 1339, 1348 n.13 (CIT 2005) ("Total facts available is therefore appropriate because Commerce has no reliable factors of production information with which to calculate Taoen's antidumping margin. Whether another substitute margin would be more rationally related to the 'actual' margin is not before the court because plaintiff has not suggested one, and one is not readily apparent in the record.").

Here, the statute permitted Commerce to choose "any dumping margin from any segment of the proceeding under the applicable antidumping order." 19 U.S.C. § 1677b(d)(1)(B). That's what the Department did: it applied the calculated rate from the eighth administrative review of Commerce's original antidumping order. *See* ECF 75-1, at 19. Thus, in selecting $3.87/kg, "Commerce acted within its discretion in its selection of that AFA rate." *Deacero*, 996 F.3d at 1300.

**Ct. No. 19-00055** **Page 17**

The administrative record allowed the Department to select $3.87/kg as a "total adverse facts available" rate for Hung Vuong. The court therefore sustains Commerce's selection of that rate.

## Conclusion

For the reasons explained above, the court **SUSTAINS** Commerce's remand results. Doing so resolves the outstanding issues in this case, so the court will enter judgment for the government and Catfish Farmers. *See* USCIT R. 58(a).

Dated: October 12, 2021    /s/ *M. Miller Baker*
         New York, NY      M. Miller Baker, Judge